

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: November 6, 2023**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:  IKECHUKWU H. OKORIE**                    **CASE NO. 19-50379-KMS**

**DEBTOR**                                                                      **CHAPTER 7**

### OPINION AND ORDER
### ON DEBTOR'S OBJECTIONS TO CLAIMS
### (DKT. ## 612, 613, 614, 619, 620, 621, 622, 623, 624,
### 627, 628, 635, 638, 639, 640, 641, 642, 714, 756, 772)

**MATTERS BEFORE THE COURT,** having been heard on August 17, 2023, and taken

under advisement, are Objections to Claims by Ikechukwu H. Okorie ("Dr. Okorie"), Debtor in

the above-styled chapter 7 case, of Citizens Bank (ECF No. 642), American Express National

Bank (ECF No. 623), Trustmark National Bank (ECF No. 638), PriorityOne Bank (ECF Nos. 612,

635), OneMain Financial Group, LLC (ECF NO. 641), Wells Fargo  Bank, NA (ECF Nos. 628,

640), National Funding (ECF No. 619), and First Bank (ECF Nos. 613, 714). Dr. Okorie's

Objection to Claim No. 19-2 of National Funding (ECF No. 756) was set for hearing on October

19, 2023, but removed and taken under advisement when National Funding filed its response.

**ADDITIONAL MATTERS BEFORE THE COURT,** to which no responsive pleadings

were filed and that are considered without hearing, are Dr. Okorie's Objections to Claims of

Synchrony Bank (ECF Nos. 621, 627, 772), BancorpSouth Bank (ECF No. 639), US Bank (ECF

Nos. 614, 622), Knight Capital Funding III LLC (ECF No. 620) and Quantum3 Group LLC (ECF No. 624).[1]

After consideration of the evidence and applicable law, the Court overrules Dr. Okorie's objections.

### Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of these actions under 28 U.S.C. § 1334. These matters are core proceedings under 28 U.S.C. § 157(b)(2)(B).

### Procedural Background

On February 27, 2019, Dr. Okorie filed his individual petition for relief under chapter 11 of the Bankruptcy Code. ECF No. 1. On February 17, 2021, after spending two years in chapter 11 without confirming a plan, Dr. Okorie voluntarily converted his case to chapter 7. ECF Nos. 334, 339. On February 18, 2021, Kimberly R. Lentz was appointed as Trustee for the chapter 7 case. ECF No. 340. Dr. Okorie received his discharge on October 5, 2021. And on February 4, 2022, Dr. Okorie's counsel was allowed to withdraw from the representation because Dr. Okorie was filing *pro se* pleadings that his counsel did not agree with. ECF Nos. 488, 491.

In June 2023, two years after conversion and as the chapter 7 case was wrapping up, Dr. Okorie began filing *pro se* objections to creditors' proofs of claim. The objections, responses, and replies are itemized below.

---

[1] Debtor noticed these objections on a "negative notice" that allows relief to be granted without hearing if no response is filed. *See In re Haney*, No. 21-02007-TOM-13, 2022 WL 3364168, at *7 (Bankr. N.D. Ala. Aug. 12, 2022) (discussing negative notice procedure as generally saving time and expense on routine matters). Although the court is allowed to grant relief, the court is not required to, especially where it is not warranted under the facts or the law. *See In re Davis*, No. 09-42865, 2011 WL 10483434, at *1-2 (Bankr. E.D. Tex. Sept. 30, 2011) (where claimants did not respond to debtor's objection that was noticed on negative notice, court elected not to rule on papers), *aff'd sub nom. In re Armstrong*, 487 B.R. 764 (E.D. Tex. 2012). *See also* Miss. Bankr. L. R. 9013-1(d) ("If a response is not timely filed, the court *may* enter an order granting the relief requested . . . .") (emphasis added).

| Objection | Claim | Creditor | Amount | Response | Reply |
|---|---|---|---|---|---|
| #642 Objection | Claim No. 1-2 | Citizens Bank | $1,407,451.72 | #699 Response | #720 Reply |
| #623 Objection | Claim No. 4-1 | American Express National Bank | $63,658.80 | #646 Response | #651 Reply #702 Reply |
| #638 Objection | Claim No. 10-1 | Trustmark National Bank | $561,815.82 | #698 Response | #719 Reply |
| #635 Objection | Claim No. 11-1 | PriorityOne Bank | $814,770.44 | #637 Response | #672 Reply |
| #612 Objection | Claim No. 11-2[2] | PriorityOne Bank | $169,067.28 | #633 Response | #672 Reply |
| #641 Objection | Claim No. 15-1 | OneMain Financial Group LLC | $12,165.21 | #707 Response | #718 Reply |
| #640 Objection | Claim No. 16-1 | Wells Fargo Bank NA | $45,855.57 | #693 Response | #700 Reply |
| #628 Objection | Claim No. 17-2 | Wells Fargo Bank NA | $195,424.48 | #660 Response | #671 Reply |
| #619 Objection | Claim No. 19-1 | National Funding | $100,602.52 | #650 Response | #652 Reply #701 Reply |
| #756 Objection | Claim No. 19-2 | National Funding | $100,602.52 | #911 Response | #921 Reply |
| #613 Objection #714 Objection | Claim No. 26-1 | First Bank | $816,063.89 | #615 Response #728 Response | #625 Reply |
| #714 Objection | Claim No. 31-1 | First Bank | $756,819.08 | #728 Response | |

Objections filed by Dr. Okorie with no responses are as follows:

| Objection | Claim | Creditor | Amount |
|---|---|---|---|
| #621 Objection | Claim No. 2-2 | Synchrony Bank | $5,399.17 |
| #772 Objection | Claim No. 2-3 | Synchrony Bank | $5,399.17 |
| #639 Objection | Claim No. 6-1 | BancorpSouth Bank | $23,776.91 |
| #614 Objection | Claim No. 8-1 | US Bank NA | $33,068.31 |
| #622 Objection | Claim No. 8-1 | US Bank NA | $33,068.31 |
| #627 Objection | Claim No. 18-1 | Synchrony Bank | $8,942.33 |
| #620 Objection | Claim No. 23-1 | Knight Capital Funding III LLC | $33,424.14 |
| #624 Objection | Claim No. 29-1 | Quantum3 Group LLC | $33,285.55 |

Dr. Okorie's objections allege a host of issues including failure to comply with Bankruptcy Rule 3001(c) requirements, creditors' lack of standing to file claims, incorrect classification of claim as secured or priority, incorrect claim amounts, failure to provide Truth in Lending

---

[2] At least three times, Dr. Okorie has filed separate objections to the original claim and the superseding amended claim. Once a claim is amended, the original claim is no longer the "live" claim; the amended claim is. *United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.)*, 656 F. App'x 717, 722 n.1 (5th Cir. 2016).

disclosures,[3] general equitable considerations, and Trustee's alleged neglect, breach of duty, conspiracy, and collusion. Some objections assert that Dr. Okorie is not the obligor on the debt, contradicting either documents attached to the claims or Dr. Okorie's admissions in the schedules.

The Court will not address all the arguments Dr. Okorie advances, including the additional arguments in his replies,[4] but instead will consider only those issues necessary to decide these objections.

### *Factual Background*

After graduating from medical school in 2003 and completing a residency in family medicine, Dr. Okorie moved to Hattiesburg, Mississippi, to work with a rural health clinic. *In re Inland Fam. Practice Center, LLC*, No. 19-50020-KMS, ECF No. 399 at 8 (Bankr. S.D. Miss. filed Jan. 3, 2019) ("Inland"). In May 2008, he opened Inland Family Practice Center LLC ("Inland") at 908 West Pine Street in Hattiesburg. *Id.* at 14, 28-29. Inland contracted with the federal government to accept assignment of Medicare Part B payment for services provided to eligible persons. *Inland Fam. Practice Ctr., LLC v. Alex M. Azar, II (In re Inland Fam. Practice Ctr., LLC)*, No. 19-06043-KMS, ECF No. 1 at 5 (Bankr. S.D. Miss. filed Dec. 3, 2019, closed July 6, 2020, after stipulated dismissal) ("Inland Adv.") Over time, Dr. Okorie opened Adeline Family Practice in Hattiesburg, St. Michael's Urgent Care of Hattiesburg ("St. Michaels"), and both an

---

[3] The Truth in Lending Act does not apply to commercial transactions. *Poe v. First Nat'l Bank of DeKalb Cnty.*, 597 F.2d 895, 896 (5th Cir. 1979). The statute of limitations for failure to provide the disclosures under TILA is one year, running from the date the transaction was consummated. 15 U.S.C. § 1640(e). But the Bankruptcy Code extends any unexpired TILA statute of limitations for two years after date of filing. 11 U.S.C. § 108(a) (extending unexpired statutes of limitations to end of limitations period or two years, whichever is later). Most of Dr. Okorie's credit transactions are commercial transactions. Regardless, all the loans were obtained before 2019, so any TILA non-disclosure claim, including any extension under § 108(a), is time-barred.

[4] "[T]he Court need not consider arguments raised for the first time in a reply brief." *Bryant v. Bogalusa Bayou R.R. LLC/Watco*, No. 2:21-cv-75-HSO-BWR, 2022 WL 3354068, at *1 (S.D. Miss. Aug. 12, 2022) (citing *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)); *In re Palasota*, No. 22-30195, 2023 WL 3673352, at *7 (Bankr. S.D. Tex. May 25, 2023).

Inland and a St. Michael's in Ellisville, Mississippi. ECF No. 326 at 38. He also opened Slocum-Radson Medical Laboratories Inc. ECF No. 61 at 9.

In 2011, Dr. Okorie and his wife, Vivian, formed Royal Oaks Rental Properties LLC ("Royal Oaks") to own and manage various real properties they purchased. ECF No. 326 at 53-54. On March 21, 2013, the Okories formed Inland Stacking LLC, later known as Inland Management LLC, to handle payroll for Dr. Okorie's various entities. Dr. Okorie and Vivian Okorie each owned 50% of Royal Oaks and Inland Management. ECF No. 326 at 14, 19, 47.

During 2008-2013, the record shows that Dr. Okorie or one of his companies applied for and obtained the following credit:[5]

| Date | Creditor | Credit Type | Collateral | Borrower | Guarantor | Cite |
|------|----------|-------------|------------|----------|-----------|------|
| 3/3/2008 | Wells Fargo | Consumer credit card | None | Dr. Okorie | None | POC 16-1 |
| 6/30/2011 | American Express | Business credit card | None | Dr. Okorie Inland | None | ECF No. 692 |
| 11/27/2013 | Wells Fargo | Commercial loan for $116,800 | Deed of trust[6] | Royal Oaks | Dr. Okorie Vivian Okorie Slocum-Radson Inland | ECF No. 458 at 3-4 |

The first sign of trouble occurred on September 30, 2014, when Inland received a notice of Suspension of Medicare Payments from Centers for Medicare and Medicaid Services claiming that Medicare had overpaid Inland. Inland Adv. ECF No. 1 at 6-7. Medicare asserted that Inland's urine drug testing of chronic pain patients was not medically necessary and that Medicare would recoup fees it had paid to Inland for these tests. Inland ECF No. 399 at 19-20. Approximately six months

---

[5] Dr. Okorie's and Inland's schedules list more debts, but when and for what purposes these debts were incurred are unknown, because the creditors did not file proofs of claim. *See, e.g.*, ECF No. 61 at 19, Inland ECF No. 91 at 6 ($193,826 loan from ACE Funding Source); ECF No. 61 at 21, Inland ECF No. 91 at 8 ($56,000 loan from Headway Capital LLC); ECF No. 61 at 23 ($28,000 revolving debt with Universal Card).

[6] Documents produced by Wells Fargo indicate that a deed of trust was executed as part of this loan. ECF No. 458-1 at 50. The record is unclear which property was subject to the deed of trust.

later, Inland received a demand letter alleging a Medicare overpayment of $4,655,794.47. Inland Adv. ECF No. 1 at 7. Inland timely filed a request for redetermination with Medicare, which somewhat reduced the amount of the overpayment,[7] but while the request was pending, on November 12, 2015, the Mississippi State Board of Medical Licensure ("State Board") restricted Dr. Okorie's license for pain management and addiction. ECF No. 326 at 39, 48-50; Inland ECF No. 50-6.

Although its payment suspension was lifted after approximately six months, Medicare began recouping its overpayment from new fees it owed Inland. As a result of the recoupment, Inland terminated approximately sixty employees; closed the Adeline clinic, both Ellisville locations, and Slocum-Radson; and ultimately moved Inland of Hattiesburg into the St. Michael's location. Inland Adv. ECF No. 1 at 9; ECF No. 326 at 41-43. To keep Inland open, Dr. Okorie "liquidated his retirement account, borrowed the maximum amount of money on his real estate holdings, and contributed nearly all of his personal assets to Inland." Inland Adv. ECF No. 1 at 9.

Unfortunately, Dr. Okorie's troubles were not over. On March 22, 2018, the State Board suspended his medical license. Inland ECF No. 50-6. Although the State Board entered an amended determination on October 4, 2018, which allowed Dr. Okorie to return to medical practice, he was still restricted from treating or managing patients with chronic pain or addiction. Inland ECF No. 50-5 at 21-23. Collaterally, the restriction resulted in Dr. Okorie's "exclu[sion] from approved lists of care providers for which most medical insurance carriers would pay for

---

[7]Apparently, Medicare is not required to review its payment records and recoup only what it has actually paid for procedures alleged unnecessary. Instead, it extrapolates its recoupment amount from a sample of patient files. *See Inland Fam. Practice Ctr., LLC v. Azar*, No. 2:18-CV-140-KS-MTP, 2018 WL 4289624, at *2 (S.D. Miss. Sept. 7, 2018); *Inland*, ECF No. 399 at 20. Inland appealed the recoupment decision, and in 2020, the district court remanded the appeal for reconsideration based on a report from the Governor's Opioid and Heroin Study Task Force finding "[p]oint of service drug testing should be done each time a Schedule 2 medication is written for the treatment of non-cancer pain" and other new evidence. *Inland Fam. Practice Ctr., LLC v. Azar*, No. 2:18-CV-140-KS-MTP, 2020 WL 8621519, at *1 (S.D. Miss. Sept. 11, 2020).

services. This substantially and suddenly diminished [his] income . . . ." ECF No. 256 at 3. Dr. Okorie's medical license was not fully reinstated until September 19, 2019. ECF No. 326 at 6, 47.

Once the issues arose with Medicare and the State Board, Dr. Okorie or one of his companies applied for and obtained more credit:

| Date | Creditor | Credit Type | Collateral | Borrower | Guarantor | Cite |
|------|----------|-------------|------------|----------|-----------|------|
| 9/28/2015 | Citizens Bank | Commercial loan for $180,773 | Medical equipment | St. Michael's of Hattiesburg | Dr. Okorie | POC 1-2 at 23-27 |
| 1/29/2016 | Trustmark[8] | Commercial loan for $445,880 | All equipment and general intangibles | Inland Dr. Okorie | | POC 10-1 Part 3 at 1-9 |
| 3/17/2016 | Trustmark | Commercial loan for $303,921 | X-ray machine and related equipment | Inland | Dr. Okorie | POC 10-1 Part 3 at 10-18 |
| 3/17/2016 | Trustmark | Commercial loan for $57,117 | All equipment and general intangibles | Inland | Dr. Okorie | POC 10-1 Part 3 at 19-20 |
| 5/19/2016 | Trustmark | Commercial loan for $38,126 | X-ray machine and related equipment | Inland | Dr. Okorie | POC 10-1 Part 4 at 11-21 |
| 6/14/2016 | Knight Capital Funding | Receivables sale agreement $145,000 | Future receivables | Inland | Dr. Okorie | POC 23-1 |
| 9/15/16 | U.S. Bank | Equipment finance agreement for $129,074.47 | Specified medical equipment | Inland | Dr. Okorie | POC 8-2 |
| 10/24/2016 | Wells Fargo | Commercial line of credit of $400,000 | Inventory accounts equipment | Inland | Dr. Okorie Vivian Okorie Slocum- Radson Royal Oaks | ECF 458-1 at 12-16 |
| 8/11/2017 | First Bank | Commercial loan for $750,000 | Destin Condo and assignment of rents | Royal Oaks | Dr. Okorie | POC 26-1 |
| 12/5/2017 | National Funding | Commercial loan for $149,950 | Blanket UCC | Inland | Dr. Okorie | POC 19-2 |
| 5/21/2018 | Webbank | Personal loan for $35,000 | None | Dr. Okorie | None | POC 29-1 |

---

[8] At least one of the Trustmark loans was subject to a change in terms agreement or renewal.

| 6/7/2018 | PriorityOne | Commercial loan for $1,545,470.86 | 908 West Pine Street & 3700 Hardy Street | Inland | Dr. Okorie | POC 11-1 |
| 6/20/2018 | Citizens Bank | Commercial loan for $1,201,345 | 3700 Hardy Street | Royal Oaks | Dr. Okorie | POC 1-2 at 4-22 |
| 6/22/2018 | Priority One | Commercial loan change in terms. Reduced loan amount to $800,091.57 | 908 West Pine Street | Inland | Dr. Okorie | POC 11-1 at 18-19 |
| 10/11/2018 | OneMain Financial | Personal loan for $10,654.17 | None | Dr. Okorie | None | POC 15-1 |

On April 17, 2018, Wells Fargo sued Dr. Okorie, Vivian Okorie, Inland, Royal Oaks, and Slocum-Radson for breach of contract in the Circuit Court of Forrest County, Mississippi. ECF No. 458-1 at 2-10. Two days later, Inland sold its Ellisville clinic to Circle J. Properties LLC for $765,000. *Trustmark Nat'l Bank v. Okorie (In re Okorie)*, No. 19-06032-KMS, ECF No. 1-5 (Bankr. S.D. Miss. filed Aug. 9, 2019) ("Trustmark Adv."). The loan proceeds were used to pay off a $587,940.90 loan with Citizens Bank. *Id.* A Bill of Sale executed in connection with the sale purported to also transfer an x-ray machine and related equipment on which Trustmark had a lien. Trustmark Adv. ECF No. 1-6. Trustmark asserts that it was neither notified of the sale of its collateral nor paid from the sale proceeds. Trustmark Adv. ECF No. 1 at 5-6.

On June 4, 2018, Vivian Okorie resigned as a member and manager of Royal Oaks.[9]  ECF No. 536 at 5-6. And on October 9, 2018, the Circuit Court of Forrest County entered judgment in favor of Wells Fargo and against all defendants in the amount of $532,950.05 plus interest at 8% and post-judgment attorney's fees. ECF No. 458 at 5. Dr. Okorie appealed the judgment, but the appeal was dismissed when he failed to file his brief. ECF No. 467-1 at 2.

---

[9]The timing suggests that she resigned to avoid having to guarantee the $1,200,000 loan from Citizens Bank to Royal Oaks six days later.

On November 6, 2018, Dr. Okorie filed a chapter 11 petition *pro se*. *In re Ikechukwu Hyginus Okorie,* No. 18-52169-KMS, ECF No. 1 (Bankr. S.D. Miss. filed Nov. 6, 2018, dismissed Jan. 14, 2019) ("2018 Case"). The matrix identified creditors including Wells Fargo, Trustmark, U.S. Bank, Synchrony Bank, American Express, Knight Capital Funding, and OneMain Financial. 2018 Case ECF No. 3. PriorityOne was absent from this list.

No schedules were ever filed in the case. Nevertheless, on November 30, 2018, PriorityOne filed a motion for relief from stay regarding its collateral at 908 West Pine Street. 2018 Case ECF No. 31. Dr. Okorie did not respond.[10] Instead, on December 14, 2018, Dr. Okorie filed a motion to dismiss his case. 2018 Case ECF No. 44. Five days later, the Court granted PriorityOne's motion for relief. 2018 Case ECF No. 53. Dr. Okorie's case was dismissed on January 14, 2019. 2018 Case ECF No. 62.

On January 3, 2019, Inland filed a chapter 11 petition. Inland ECF No. 1. And on February 27, 2019, Dr. Okorie filed his second individual chapter 11 case, this time with counsel. ECF No. 1. Before he filed, Dr. Okorie, on behalf of Royal Oaks, transferred title to all Royal Oaks's real properties to himself. ECF Nos. 326 at 53, 540-3 (912 West Pine Street, Destin Condo, Houston property); Claim No. 1-2 at 21-22 (3700 Hardy Street).

Inland Chapter 11

Inland, d.b.a. St. Michael's, filed its schedules on January 31, 2019. Inland ECF No. 51. Dr. Okorie merged St. Michael's into Inland before Inland's bankruptcy filing. ECF No. 326 at 12. St. Michael's operated at 3700 Hardy Street in Hattiesburg.  Inland ECF No. 399 at 29.

---

[10]Dr. Okorie asserts that he did not receive notice of PriorityOne's motion. 2018 Case ECF No. 71; *but see* 2018 Case ECF No. 84 at 2 (noting that docket reflects that at minimum, BNC emailed him notice of hearing).

Dr. Okorie, the manager and sole member, signed the schedules on behalf of Inland under penalty of perjury. Inland ECF Nos. 51 at 1, 250 at 7-8. Relevant to the current motions, Inland identified the following debts as undisputed:

| Creditor | Type of Debt | Amount | Collateral/Owner |
|---|---|---|---|
| American Express | Credit card | $61,810.67 | |
| Citizens Bank | Loan | $106,110.47 | Medical equipment/Inland |
| Citizens Bank | Loan | $800,000 | 3700 Hardy Street/Dr. Okorie |
| PriorityOne Bank | Loan | $824,523.10 | 908 West Pine Street/Dr. Okorie |
| PayPal  (now Synchrony)[11] | Credit card | $5429.50 | |
| Synchrony Bank | Credit card | $12,000 | |
| The First (First Bank) | Loan | $750,000 | Destin Condo/Dr.Okorie |
| Trustmark National Bank | | $550,000 | |
| Wells Fargo | Loan | $80,000 | 912 West Pine Street/Dr. Okorie |
| Wells Fargo | | $532,950.05 | |
| Wells Fargo | Credit card | $51,000 | |

Inland ECF No. 51 at 9-18. Inland identified U.S Bank, Knight Capital Funding, and National Funding as holding loans that were disputed. *Id.* at 11, 15, 16. Amended schedules filed on March 29, 2019, added as undisputed a second U.S. Bank equipment finance loan in the amount $5000, secured by a chemical analyzer. Inland ECF No. 91 at 4. Inland filed no other amendments regarding any of these creditors.

Almost immediately after Inland filed bankruptcy, creditors began filing motions for relief from stay. *See* Inland ECF No. 23 (PriorityOne); No. 36 (Trustmark); No. 148 (Beckman Coulter); No. 216 (Citizens Bank). On the PriorityOne motion, the Court entered an agreed order that required monthly payments beginning March 1, 2019. Inland ECF No. 75. Inland did not make the March 1 payment. So the stay lifted on the 908 West Pine Street property, and the property was abandoned from the bankruptcy estate. Inland ECF No. 86.

---

[11] Synchrony filed a claim in Dr. Okorie's case that apparently includes this debt. *See* Claim No. 2-3. The PayPal account statement attached to the proof of claim is in the exact amount of the debt scheduled in Inland, but the statement identifies the customer as Dr. Okorie. *Id*. at 5.

Inland, which was operating clinics at both the 908 West Pine Street and 3700 Hardy Street locations, consolidated operations at 3700 Hardy Street. Inland ECF No. 100. In furtherance of the consolidation, Inland filed notices of abandonment of certain equipment. Inland ECF Nos. 100 (Trustmark's collateral), 117 (Wells Fargo's collateral). Stay relief was granted to both Beckman Coulter and Citizens Bank regarding equipment in Inland's possession. Inland ECF Nos. 241 (no-response order), 243 (agreed order).

On November 20, 2019, Inland filed its disclosure statement and plan. Inland ECF Nos. 250-254. After setting out what led to the chapter 11 filing, Inland's disclosure statement acknowledged the orders granting stay relief to PriorityOne, Trustmark, Citizens Bank, and Beckman Coulter. Inland ECF No. 250 at 9-11. It also acknowledged the deficiency claims of PriorityOne, U.S. Bank, and Citizens Bank, *id.* at 14, as well as unsecured claims of American Express, PayPal Credit (identified as Payroll Credit), Synchrony Bank, Trustmark, and Wells Fargo, *id.* at 12. Only the claim of Knight Capital Funding was identified as disputed, although Inland reserved the right to object to other claims. *Id.* at 11-14. The disclosure statement was approved without objection, and the Court set a confirmation hearing. Inland ECF No. 261.

Faced with various objections to its plan, Inland filed an amended plan on August 20, 2020. Inland ECF No. 333. The amended plan recognized that certain creditors had claims against both Inland and Dr. Okorie, specifically Well Fargo, Trustmark, American Express, Synchrony Bank, National Funding, and Knight Capital Funding. Inland ECF No. 333 at 5. These creditors "shall apply all payments on their claims made under either the Plan in this case or the Plan in the Okorie Chapter 11 against the total claim and to reduce the balance owed as to both cases by the amount received from either Plan as well as payments made outside of any plan." *Id.* The plan recognized PriorityOne's foreclosure of 908 West Pine Street, noting that "Priority One foreclosed on the

property and has filed a claim in Dr. Okorie's independent case." *Id.* at 7 (Class 3). The plan also specifically classified the claims of U.S. Bank (Class 4), Citizens Bank (Class 5), Knight Capital Funding (Class 7), National Funding (Class 8), and Wells Fargo (Class 9). *Id.* at 7-9.

Inland had sixty days from the effective date to object to claims. *Id.* at 12. Before confirmation, Inland objected to the secured status of the claims of Knight Capital Funding and National Funding, asserting that because of Wells Fargo's earlier-filed UCC, neither creditor had any collateral to secure their claims. Inland ECF Nos. 328, 329. Those objections were sustained, resulting in both claims being unsecured. Inland ECF Nos. 341, 342. No other objections were filed.

At the confirmation hearing on September 29, 2020, Dr. Okorie sought confirmation of Inland's plan, testifying that he had "seen" it. Inland ECF No. 406 at 6. No creditors objected to confirmation, and Wells Fargo and American Express both voted to accept the plan. An order confirming plan was entered on October 19, 2020. Inland ECF No. 358. Under Inland's plan, Wells Fargo is to be paid $25,000 on its secured claim, and unsecured creditors, including Trustmark, American Express, PayPal (now Synchrony), Synchrony Bank, U.S. Bank, Knight Capital Funding, and National Funding, are to be paid their pro-rata share of $10,000. Inland ECF No. 333 at 9-10. Inland continues to operate under its confirmed plan.

<u>2019 Individual Chapter 11</u>

Dr. Okorie filed his schedules, signed under penalty of perjury, on April 5, 2019. ECF No. 35. He identified the following debts as undisputed:

| Creditor | Type of Debt | Amount | Collateral/Owner |
|---|---|---|---|
| American Express | Credit card | $61,810.67 | |
| BancorpSouth | Credit card | $25,000 | |
| Citizens Bank | Loan | $106,107.47 | Medical equipment/Inland |
| Citizens Bank | Loan | $800,000 | 3700 Hardy Street/Dr. Okorie |
| OneMain Financial | Loan | $10,000 | |
| PriorityOne Bank | Loan | $824,523.10 | 908 West Pine Street/Dr. Okorie |

| Synchrony Bank | Credit Card | $12,000 | |
| The First (First Bank) | Loan | $750,000 | Destin Condo/Dr. Okorie |
| Trustmark National Bank | Loan | $550,000 | Medical equipment/Inland |
| U.S. Bank | Equipment finance loan | $40,000 | Bone density machine/Inland |
| Wells Fargo | Judgment | $535,000 | Judgment lien |
| Wells Fargo | | $0 | 912 West Pine Street/Dr. Okorie |

*Id.* at 20-30. He identified Knight Capital Funding and National Funding as having loans that were disputed. *Id.* at 3. Amended schedules filed on September 26, 2019, changed the creditor with the lien on the Destin Condo from The First to First Bank. ECF No. 143 at 3. Dr. Okorie filed no other amendments regarding any of these creditors.

On April 17, 2019, Derek Henderson, counsel for PriorityOne, sent a letter to Pat Sheehan, counsel for Dr. Okorie, seeking an agreement that the stay was not in effect regarding 908 West Pine Street.  ECF No. 784-1. Henderson had obtained relief from the stay in the Inland case and believed that the stay in Dr. Okorie's case had expired under 28 U.S.C. 362(3)(c).[12] Sheehan emailed Henderson, stating, "We agree that there is no stay. The clinic will have moved out of 908 West Pine by May 1ˢᵗ." *Id.* at 3. In reliance on the agreement with Dr. Okorie's counsel, PriorityOne scheduled a foreclosure of 908 West Pine on June 7, 2019. *Id.* at 4. The foreclosure proceeded as scheduled. ECF No. 612 at 2; ECF No. 784 at 2.

On November 20, 2019, Dr. Okorie filed his disclosure statement and plan. ECF Nos. 155, 156. After setting out what led to the chapter 11 filing, his disclosure statement acknowledged the secured claims of Citizens Bank, First Bank, National Funding, PriorityOne, U.S. Bank, and Wells

---

[12]If a debtor files a second case within a one-year period, the stay "with respect to the debtor" terminates on the thirtieth day after filing unless the debtor obtains an extension of the stay before the expiration of the thirty-day period. 11 U.S.C. § 362(c)(3). There was a split of authority regarding the meaning of this provision. Some courts held that the entire stay was terminated after thirty days, *see Smith v. Me. Bureau of Rev. Servs. (In re Smith)*, 910 F. 3d 576, 591 (1st Cir. 2018), while others held that the stay terminated only as to property of the debtor as opposed to property of the estate, *see In re Scott-Hood*, 473 B. R. 133, 136-40 (Bankr. W.D. Tex. 2012). The Fifth Circuit agreed with courts holding that the stay terminates only as to property of the debtor. *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 230 (5th Cir. 2019).

Fargo; only the claim of National Funding was identified as disputed and only as to its secured status. ECF No. 155 at 7-9. The disclosure statement was approved without objection, and the Court set a confirmation hearing. ECF No. 174.

Faced with numerous objections to the plan, Dr. Okorie filed an amended disclosure statement and plan on June 30, 2020. ECF Nos. 256, 257. The amended disclosure statement deleted U.S. Bank and a Wells Fargo debt from the secured creditor list. ECF No. 256 at 7-8. It again noted that the secured status of National Funding's claim was disputed. *Id*. at 9. The modified plan recognized PriorityOne's foreclosure of 908 West Pine Street, noting "Priority One foreclosed upon the collateral." ECF No. 257 at 6 (Class 4). The plan specifically classified the claims of Citizens Bank (Class 2), Wells Fargo (Class 5), National Funding (Class 6), and First Bank (Class 12). *Id.* at 5-9. Unsecured claims not scheduled as disputed, contingent, or unliquidated were treated in Class 16. *Id.* at 10. The Court approved the amended disclosure statement, and a confirmation hearing was set for September 29, 2020. ECF No. 274.

On September 11, 2020, Dr. Okorie filed a second modified plan of reorganization. ECF No. 286. Like the amended plan in Inland, Dr. Okorie's second amended plan recognized that certain creditors had claims against both debtors (Wells Fargo, Trustmark, American Express, Synchrony Bank, National Funding, and Knight Capital Funding). *Id.* at 5. These creditors were instructed to apply payments from either case to reduce the balance owed. *Id.* The classification of claims remained mostly the same. *Id.* at 5-12. After several resets, the confirmation hearing was ultimately set for February 18, 2021. ECF No. 314.

On December 15, 2020, Trustmark filed a motion to convert to chapter 7, asserting that Dr. Okorie had transferred funds from the estate to an online trading account. ECF No. 310. The motion was set for hearing on February 18, 2021, coinciding with the confirmation hearing. A

week before the hearing, Dr. Okorie filed his own motion to convert to chapter 7. ECF No. 334. And on February 17, 2021, the motion was granted. ECF No. 337.

Individual Chapter 7

Upon conversion, Kimberly R. Lentz was appointed Trustee. ECF No. 340. She immediately began gathering and liquidating assets of the estate, including the Destin Condo and properties in Houston, Texas; Hattiesburg, Mississippi; and New Jersey. *See* ECF Nos. 354 (motion for turnover of the Houston property); 381 (motion to sell Destin Condo); 419 (motion to sell Hattiesburg property); 436 (motion to sell Houston property); 528 (motion to sell New Jersey property). In her motions to sell, the Trustee detailed the purchasers, purchase price, liens against the properties to be paid, and other costs of sale. ECF Nos. 381, 419, 436, 528. No objections were filed to the sale motions for the Destin Condo, Houston property, and Hattiesburg property, and orders granting the motions were entered. ECF Nos. 400 (Destin Condo); 428 (Hattiesburg property); 441 (Houston property).

Dr. Okorie objected to the sale of the New Jersey property, arguing that the property belonged to Royal Oaks,[13] not him, and that his wife, although no longer a member of Royal Oaks, had not waived her "marital interest" in the Royal Oaks properties. ECF No. 536 at 3. At hearing, the Court overruled Dr. Okorie's objections, and an order approving the sale was entered. ECF No. 554. Dr. Okorie did not appeal any of the sale orders.

On March 26, 2021, Citizens Bank filed a motion for relief from stay and abandonment regarding 3700 Hardy Street. ECF No. 372. Neither the Trustee nor Dr. Okorie opposed the motion, and an order granting the motion was entered on May 17, 2021. ECF No. 405. After 3700

---

[13] As noted above, Dr. Okorie transferred all of the Royal Oaks properties into his name before the filing of this case. ECF No. 326 at 53; ECF No. 540-3 (912 West Pine Street, Destin Condo, Houston property); Claim No. 1-2 at 21-22 (3700 Hardy Street); ECF No. 61 at 4-6. A title report obtained by the Trustee indicates that Dr. Okorie owned the New Jersey property outright. ECF No. 540-1 at 2.

Hardy Street was abandoned from the bankruptcy estate, Dr. Okorie and Citizens Bank entered into a reaffirmation agreement that restructured and combined the real property loan with an equipment loan guaranteed by Dr. Okorie. ECF No. 416.

Dr. Okorie received his discharge on October 5, 2021. ECF No. 447. A few weeks later, he filed a *pro se* motion asking the Court to set aside the Wells Fargo state court judgment and related discovery and to order the Trustee to disburse funds from the sale of the Destin Condo and Hattiesburg property to Wells Fargo. ECF No. 450. On February 2, 2022, Pat Sheehan filed a motion to withdraw as counsel, stating, "Debtor has filed *pro-se* pleadings to which the undersigned counsel does not subscribe." ECF No. 488. The Court granted Sheehan's motion. ECF No. 490.

Throughout the pendency of this case, Dr. Okorie and Vivian Okorie have been involved in litigation in state court seeking to set aside the Wells Fargo judgment. ECF No. 660 at 4-5. On August 9, 2022, the Okories entered into a settlement agreement with Wells Fargo in which Vivian Okorie agreed to pay Wells Fargo $100,000 in settlement of all claims against her. ECF 628-5 at 2. The Okories agreed to dismiss with prejudice their pending litigation with Wells Fargo. *Id.* at 3. Wells Fargo agreed to file a satisfaction of judgment against Vivian Okorie in the state court action and to release its judgment lien against her. *Id.* at 3-4. Dr. Okorie agreed that he would not "object or take any actions whatsoever in opposition to" Wells Fargo's claims in the Inland case and in this case. *Id.* at 4. Upon receipt of the settlement funds, Wells Fargo released its judgment and judgment liens against Vivian Okorie, and the appeals were dismissed. ECF 660 at 6.

By January 2023, all property of the estate had been liquidated. Preparing to make creditor distributions, the Trustee filed objections to claims.[14] *See* ECF No. 573 (Objection to Claim No. 33 of Destiny by the Sea Owners Association, Inc.); ECF No. 574 (Objection to Claim No. 27 of OneMain Financial); ECF No. 575 (Objection to Claim No. 25 of West Keegans Bayou Improvement District); ECF No. 576 (Objection to Claim No. 24 of Alief Independent School District); ECF No. 577 (Objection to Claim Nos. 5, 28 of Okaloosa County Tax Collector); ECF No. 578 (Objection to Claim Nos. 20, 30 of Harris County et al); ECF No. 579 (Objection to Claim Nos. 12, 13, 21, 22 of Ashley Funding Services, LLC); ECF No. 580 (Objection to Claim No. 8 of U.S. Bank). Claims 5, 20, 24, 25, 28, 30, and 33 were disallowed because per court order these claims were paid in full at the closings of the Destin Condo and Houston property. ECF Nos. 591, 592, 593, 594, 595. Claims 12, 13, 21 and 22 were disallowed because they were solely Inland debts. ECF No. 596. Claim 27 was disallowed as a duplicate claim. ECF No. 586. And the objection to Claim 8 was withdrawn when U.S. Bank filed an amended claim that gave credit for the sale of its collateral. ECF No. 589.

By May 2023, the case appeared to be in wind down mode. The Trustee filed a final application for payment of the accountant for the estate, which was granted. ECF Nos. 603, 605.

Then, on June 9, 2023, Dr. Okorie filed a motion to stay a foreclosure proceeding initiated by Citizens Bank, ECF No. 606, the first of over thirty complaints, motions and objections he would file over the coming weeks, including the objections to claims that are the subject of this order.

---

[14] Chapter 7 trustees typically object on the following grounds: claim is duplicative, claim filed in wrong case, claim not timely, claim satisfied or released during case, and claim does not comply with rules so trustee can't determine validity. *See* Fed. R. Bankr. P. 3007(d); U.S. Dept't of Just., Handbook for Chapter 7 Trustees § F(2) (2012).

On August 17, 2023, the Court heard certain of Dr. Okorie's objections to claims. After presenting his arguments, Dr. Okorie elected to leave the courthouse before hearing creditors' responses. ECF No. 792 at 39.

### Analysis and Conclusions of Law

### I.  Dr. Okorie is not a party in interest that may object to claims under § 502(a).

A creditor in a bankruptcy case is entitled to file a proof of claim to document and assert the right to receive payment or distribution from the debtor's estate.[15] *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007); 11 U.S.C. § 501(a) ("A creditor … may file a proof of claim."); Fed. R. Bankr. P. 3001(a) ("A proof of claim is a written statement setting forth a creditor's claim."). "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a *party in interest . . .* objects." 11 U.S.C. § 502(a) (emphasis added). So the initial question is whether Dr. Okorie is a party in interest who may object to a creditor's claim.

The term "party in interest" is not defined in the Bankruptcy Code. "In a case concerning standing to object to a proof of claim, the Fifth Circuit has held that 'party in interest' 'generally

---

[15] In some objections, Dr. Okorie alleges that the creditor lacked standing to file a claim and therefore the claim is not valid. Under the Bankruptcy Code, "creditor" includes an entity that has a claim against the debtor that arose before the bankruptcy, and "claim" includes a right to payment regardless of whether it is disputed or liquidated. *See* 11 U.S.C. § 101(10), (5). All claimants addressed in this opinion provided information and documentation establishing that they have prepetition claims against Dr. Okorie individually. Consequently, there is no merit to his argument.

In some objections, Dr. Okorie argued that the filing of a proof of claim or adversary complaint constitutes a violation of the automatic stay and is sanctionable. *See* ECF No. 638 at 2; ECF No. 756 at 5. The automatic stay operates as a stay of only the specifically enumerated types of action set out in the statute, § 362(a)(1-8), none of which include the filing of proofs of claim or adversary complaints. *See Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 352 (5th Cir. 2017) ("[T]he automatic stay does not bar the filing of proofs of claims in the debtor's bankruptcy case."); *Hurst v. U.S. Bank (In re Hurst)*, 357 B.R. 782, 785 (Bankr. W.D. Ark. 2006) ("The Debtor does not and cannot make a valid argument that the filing of a proof of claim, even when incorrect, violates the automatic stay set out in 11 U.S.C. § 362."). Discussing the filing of a dischargeability complaint, one court stated that "[t]he contention that the exercise of a mandated statutory right under the Bankruptcy Code is a violation of the automatic stay is almost as absurd as a contention that any creditor who files a proof of claim in bankruptcy violated the automatic stay." *Nelson v. Providian Nat'l Bank (In re Nelson)*, 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999).

means anyone who has a legally protected interest that could be affected by the bankruptcy case.'" *Plant Materials, LLC v. All. Consulting Grp., LLC*, 596 B.R. 851, 854-55 (S.D. Miss. 2019) (quoting *Khan v. Xenon Health, L.L.C.* (*In re Xenon Anesthesia of Tex., P.L.L.C.*), 698 F. App'x 793, 794 (5th Cir. 2017)).

The chapter 7 trustee has a statutory duty to examine claims, and, if necessary, to object to improper claims. *In re Fantaci*, No. 21-11127, 2023 WL 6164906, at *4 (Bankr. E.D. La. Sept. 20, 2023) (citing § 704(a)(5)). Other parties are generally prohibited from objecting to claims. *See In re Baker Sales, Inc.*, No. 13-12693, 2022 WL 362908, at *3 (Bankr. E.D. La. Feb. 7, 2022) ("[G]enerally, '[t]he vast majority of courts have held that a chapter 7 trustee alone may file objections to proofs of claim.'" (quoting *In re I & F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998))). "To permit otherwise would 'usurp the trustee's authority and . . . require the courts to rule on objections where the allowance or disallowance of the claim is meaningless to the administration of the estate.'" *In re Fantaci*, 2023 WL 6164906, at *4 (citations omitted).

In some circumstances, the debtor may be considered a party in interest for purposes of objecting to claims. "In chapter 7 cases, the debtor's standing has generally been limited to situations where the debtor has a pecuniary interest in the outcome of the objection because the estate will generate a surplus beyond creditor claims, which would be returned to the debtor under section 726(a)(6)." *Collier on Bankruptcy* ¶ 502.02[2][c] (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also In re Fantaci*, 2023 WL 6164906, at *4 ("[A] debtor or equity interest holder may have standing to object to proofs of claim if there is a reasonable possibility of a surplus after all claims are paid."); *In re Dinoto*, 576 B.R. 835, 838 (Bankr. E.D. Mich. 2017) ("Debtor cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such surplus is a reasonable possibility."). Another exception allows a debtor to object to an excessive

dischargeable claim that would reduce distributions on a nondischargeable claim.[16] *Collier on Bankruptcy* ¶ 502.02[2][c].

A debtor may also object where a trustee unjustifiably refuses to pursue a claim objection. *In re Baker Sales*, 2022 WL 362908, at *3. Despite what Dr. Okorie argues, that exception does not apply here.

Although Dr. Okorie asserts that the Trustee has failed in her duties and acted in collusion or conspiracy with creditors, the Trustee filed multiple objections, resulting in the disallowance of eleven claims. *See* ECF Nos. 591 (33), 592 (25), 593 (24), 594 (5, 28), 595 (20, 30), 596 (12, 13, 21, 22). And based on the Court's analysis of Dr. Okorie's claim objections, the Trustee's decision not to file objections to the remaining claims was justifiable. Dr. Okorie offers no specific factual allegations or detail about the Trustee's actions that would indicate improper conduct, conspiracy, or a neglect of her duties. This Court "need not consider frivolous, conclusive, or general objections." *Keyes v. Huffman*, No. 1:22-cv-228-HSO-LGI, 2023 WL 5616063, at *2 (S.D. Miss. Aug. 30, 2023).

More importantly, "[t]he trustee owes fiduciary duties to all creditors" and "owes no fiduciary duty to a debtor where the estate is insolvent." Joan N. Feeney & Michael J. Stepan, 1 *Bankruptcy Law Manual* § 4:7. (5th ed.); *see also In re McCombs*, 436 B.R. 421, 439 (Bankr. S.D. Tex. 2010) (chapter 7 trustee has fiduciary duty to maximize distribution to creditors).

Here, the assets of the chapter 7 estate did not produce a surplus beyond claims. At the August 17 hearing, the Trustee stated that the estate has approximately $1,250,000 in total

---

[16] Trustmark has filed an adversary proceeding seeking nondischargeability of a portion of its debt. Trustmark Adv. ECF No. 1. This action is stayed by agreement of the parties pending the outcome of distributions to unsecured creditors. *Id.* at ECF No. 29. As shown in Section II below, Dr. Okorie has admitted the total amount of Trustmark's debt and has no basis for objection.

unsecured claims to be paid and only $507,812.34 on deposit. ECF No. 792 at 43. And fees for the Trustee and her attorney have not yet been paid. *Id.* As explained in Section II below, Dr. Okorie has admitted owing unsecured debt substantially more than $500,000. These numbers establish that the estate has insufficient funds to generate a surplus over creditors' claims. Thus, Dr. Okorie is not a party in interest entitled to object to claims.

## II.  Dr. Okorie is barred from asserting positions in his claim objections that are inconsistent with previous admissions in his bankruptcy schedules and disclosure statements.

Dr. Okorie scheduled the following debts as undisputed in his bankruptcy schedules:

| Creditor | Type of Debt | Amount | Collateral/Owner |
|---|---|---|---|
| American Express | Credit card | $61,810.67 | |
| BancorpSouth | Credit card | $25,000 | |
| Citizens Bank | Loan | $106,107.47 | Medical equipment/Inland |
| Citizens Bank | Loan | $800,000 | 3700 Hardy Street/Dr. Okorie |
| OneMain Financial | Loan | $10,000 | |
| PriorityOne Bank | Loan | $824,523.10 | 908 West Pine Street/Dr. Okorie |
| Synchrony Bank | Credit card | $12,000 | |
| The First (First Bank) | Loan | $750,000 | Destin Condo/Dr. Okorie |
| Trustmark National Bank | Loan | $550,000 | |
| U.S. Bank | Equipment finance loan | $40,000 | Bone density machine/Inland |
| Wells Fargo | Judgment | $535,000 | |
| Wells Fargo | | $0 | 912 West Pine Street/Dr. Okorie |

ECF No. 35 at 20-30.[17]

In his Chapter 11 disclosure statement, Dr. Okorie acknowledged the secured claims of Citizens Bank, First Bank, National Funding, PriorityOne, U.S. Bank, and Wells Fargo—claims he now contests. ECF No. 155 at 7-9. Only the claim of National Funding was identified as disputed. *Id.* at 8-9. The disclosure statement was approved without objection, and the Court set a confirmation hearing. ECF No. 174. The amended disclosure statement, which was also approved by the Court, recognized PriorityOne's foreclosure of 908 West Pine Street and changed the

---

[17] Many of these debts were also identified as undisputed in the Inland case. *See* Inland ECF No. 51 at 9-18.

classification of the U.S. Bank debt and a Wells Fargo debt from secured to unsecured, ECF No. 256 at 6-9, but otherwise did not disturb the representations made in the original disclosure. After approving the amended disclosure statement, the Court set a new confirmation hearing. ECF No. 272.

Inland's disclosure statement and confirmed plan, both supported by Dr. Okorie, also acknowledged the existence and amount of the debts of PriorityOne, U.S. Bank, Citizens Bank, Knight Capital Funding, Wells Fargo (judgment and credit card), Trustmark, American Express, Synchrony Bank, and National Funding. Inland ECF Nos. 250 at 12, 333 at 7-9, 358.

Courts have recognized that "[s]tatements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *Demory v. Martin (In re Martin)*, 630 B.R. 766, 780 (Bankr. S.D. Miss. 2021) (quoting *Rex-Tech Int'l, LLC v. Rollings (In re Rollings)*, 451 F. App'x 340, 348 (5th Cir. 2011)). In *Martin*, the court held that "because the Martins listed the Default Judgment debt in the bankruptcy schedules as uncontested, Martin may not challenge the validity of that underlying debt in the Adversary based on the doctrine of judicial admissions." *Id.; see also Cole v. PRN Real Estate & Invs., Ltd.*, 829 F. App'x 399, 405-06 (11th Cir. 2020) ("A fact judicially admitted is a fact 'established not only beyond the need of evidence to prove [it], but beyond the power of evidence to controvert [it].'" (quoting *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009))).

Courts have also invoked the doctrine of judicial estoppel[18] to prevent a party "from assuming inconsistent positions in litgation" and prevent the parties "from playing fast and loose

---

[18] In the Fifth Circuit, a party is judicially estopped only if: (1) its position is clearly inconsistent with the previous one; (2) the court accepted the previous position; and (3) the party did not act inadvertently. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

with the courts to suit the exigencies of self interest." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895))).

Disclosure statements may be considered in assessing whether a debtor has taken an inconsistent position that violates the integrity of the judicial process. *See Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011) ("[C]ourts routinely consult the disclosure statement in deciding whether res judicata and judicial estoppel apply."); *Mestena, Inc. v. Atravasada Land & Cattle Co. (In re Atravasada Land & Cattle Inc.)*, 308 B.R. 255, 273-77 (Bankr. S.D. Tex. 2008) (court discussed inconsistent positions in litigation and debtor's prior disclosure statement).

As set forth above, Dr. Okorie scheduled the debts of American Express, BancorpSouth, Citizens Bank, OneMain Financial, PriorityOne,[19] Synchrony Bank,[20] First Bank, Trustmark, U.S. Bank and two Wells Fargo[21] debts as undisputed. The Trustmark claim alone exceeds the funds

---

[19] Dr. Okorie's objection also alleges that PriorityOne violated the automatic stay. Violation of the stay is not one of the grounds for disallowance of claims. *See In re Palasota*, 2023 WL 3673352, at *5 (objecting debtor must rebut presumption of validity and "establish that the claim should be disallowed pursuant to § 502(b)"). The issue of whether PriorityOne violated the stay is subject to separate proceedings currently under advisement.

[20] Dr. Okorie scheduled a $12,000 credit card debt owed to Synchrony. ECF No. 61 at 22. The claims register reflects two Synchrony credit card debts totaling $14,341.50. *See* Claim Nos. 2-3, 18-1. Claim No. 2-3 includes a PayPal Credit statement for $5429.50, apparently the same debt scheduled as undisputed in the Inland case. *See* Inland ECF No. 51 at 16. Both claims attach the information required by Bankruptcy Rule 3001(c)(3). Holders of credit card debt need only comply with the requirements of Rule 3001(c)(3); attachment of documents is not required. W. Homer Drake, Jr. et al, *Chapter 13 Prac. & Proc*. § 18.3 (June 2023 update); *In re Umstead*, 490 B.R. 186, 195-96 (Bankr. E.D. Pa. 2013) (Rule 3001(c) imposes "new disclosure obligations on holders of open-end credit accounts . . . in lieu of the former 'document-attachment' requirement.").

[21] Dr. Okorie entered into a settlement agreement with Wells Fargo in which he agreed not to object to Wells Fargo's judgment claim. *See* ECF No. 628-5 at 4. Although the parties to the settlement have performed their obligations, i.e.,

the Trustee has on hand. Dr. Okorie may not now challenge these judicially admitted debts. Likewise, Dr. Okorie made representations regarding his creditors in two disclosure statements that were approved by the Court, thereby allowing him to proceed to confirmation.[22] He made virtually identical representations regarding most of those same creditors in the Inland case. He may not now take an inconsistent position.

### III. The proofs of claim are sufficient to establish the validity and amount of the debt owed.

A proof of claim must "conform substantially to the appropriate Official Form."[23] Fed. R. Bankr. P. 3001(a). If the claim or interest in property is based on a writing, "a copy of the writing shall be filed with the proof of claim."[24] Fed. R. Bankr. P. 3001(c)(1). And "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Fed. R. Bankr. P. 3001(d). If the debtor is an individual, other requirements include itemization of interest, fees, or expenses; cure amounts where there is a

---

Vivian Okorie paid $100,000 to Wells Fargo, the Okories dismissed their appeals, and Wells Fargo released its judgment and judgment lien, Dr. Okorie now asserts that the settlement was procured through duress. ECF No. 835 at 4. Regardless, Wells Fargo provided the basis for its calculation in its claim as well as a credible explanation for how Vivian Okorie's payment was applied to the judgment, which continued to accrue interest against her despite Dr. Okorie's bankruptcy filing. ECF No. 660 at 6-7. *See Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F. 3d 292, 301 (5th Cir. 2007) (automatic stay does not apply to non-debtors); *see also In re Palasota*, 2023 WL 3673352, at *9 (discharge injunction does not affect liability of non-debtor guarantor for discharged debt).

[22] It does not matter that Dr. Okorie did not successfully confirm his plan. *See In re Superior Crewboats*, 374 F.3d at 335 (adoption does not require formal judgment; court must have adopted "either as a preliminary matter or as part of a final disposition"); *In re Atravasada*, 308 B.R. at 275 (court adopted debtor's position when it approved disclosure statement and allowed plan to proceed to confirmation).

[23] Official Bankruptcy Form 410 *Proof of Claim* requires the following information: Part 1: Identification of the claim, including the current creditor; Part 2: Information about the claim as of the filing date, including the amount, basis, security, account number, whether it is a lease, whether there is a right to setoff, and whether it is entitled to priority; Part 3: Date and signature of the person completing the proof of claim. Official Form 410 at 1-3. The form also instructs filers to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." *Id.* at 1.

[24] Open-end or revolving consumer credit agreements are excepted from this requirement. Fed. R. Bankr. P. 3001(c)(1).

security interest on property; and escrow information for a principal residence. *See* Fed. R. Bankr. P. 3001(c)(2). If a claim is based on an open-end or revolving consumer credit agreement, the creditor must supply:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
> (iii) the date of an account holder's last transaction;
> (iv) the date of the last payment on the account; and
> (v) the date on which the account was charged to profit and loss.

Fed. R. Bankr. P. 3001(c)(3)(A)(i-v).

"A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "[F]ailure to comply with Rule 3001 does not render the claim disallowable, rather, it strips it of any prima facie validity, requiring the creditor to offer the supporting documentation to carry its burden of proof in the face of an objection." *In re EP Energy E&P Co., L.P.*, 646 B.R. 795, 801 (Bankr. S.D. Tex. 2022) (internal quotation marks omitted).

By the time the Trustee reviewed the proofs of claim, all the collateral had been sold, abandoned, or otherwise liquidated. The proofs of claim for the admitted debts met the requirements of Rule 3001(c) for unsecured debt or, because of the admissions in Dr. Okorie's schedules, provided sufficient information to establish the validity and amount of the debt: Claim No. 1-2 of Citizens Bank, Claim No. 2-3 of Synchrony Bank, Claim No. 4-1 of American Express, Claim No. 6-1 of BancorpSouth, Claim No. 8-2 of U.S. Bank, Claim No. 10-1 of Trustmark, Claim No. 11-2 of PriorityOne, Claim No. 17-2 of Wells Fargo, and Claim No. 18-1 of Synchrony Bank. Dr. Okorie did not schedule the credit card debt owed to Wells Fargo.[25] But Wells Fargo's claim complies with the requirements of Rule 3001(c). *See* Claim No. 16-1.

---

[25] This debt was scheduled as undisputed in the Inland case. Inland ECF No. 51 at 17.

Knight Capital Funding was scheduled as disputed. ECF No. 35 at 3. A review of Knight Capital Funding's claim establishes that the requirements of Rule 3001(c)(1) are met. Claim No. 23-1. Knight Capital Funding did not include interest or other charges in its claim and the debt is unsecured, so Rule 3001(c)(2) does not apply. *Id.*

National Funding was also identified in the schedules as disputed. ECF No. 35 at 3. Both disclosure statements specified that only the *secured* status of the claim was disputed. ECF Nos. 155 at 8-9, 256 at 9. A review of its claim establishes that the information required by Rule 3001(c)(1) is provided. *See* Claim No. 19-1. Like Knight Capital Funding, National Funding did not include interest or other charges in its claim and the debt is unsecured, so Rule 3001(c)(2) does not apply.

These claims are sufficient to establish prima facie evidence of validity and amount. "The trustee should not object to a claim unless there is a reasonable basis for the court to disallow the claim." *Rosetta Stone Commc'ns, LLC v. Gordon (In re Chambers)*, 500 B.R. 221, 234 (Bankr. N.D. Ga. 2013). There is nothing in the record to indicate that these claims required objections.[26] *See* U.S. Dep't of Just., Handbook for Chapter 7 Trustee § F (2012) (describing issues trustee must consider when deciding whether to object to claims). Thus, the Trustee was justified in not filing objections.

The claim of Quantum3/Webbank contains all the required information except a copy of the loan agreement. *See* Claim No. 29-1. Instead, the TILA disclosure is attached, a substitution that *might* raise the technical issue of sufficiency of the documentation but would not result in

---

[26] Even if Dr. Okorie were allowed to object, he did not rebut the validity of these claims. An objecting party must submit "specific and detailed allegations that place the claim into dispute." *In re Northbelt, LLC*, 630 B.R. 228, 245 (Bankr. S.D. Tex. 2020) (quoting *In re High Standard Mfg. Co., Inc.*, No. 15-33794, 2016 WL 5947244, at *3 (Bankr. S.D. Tex. Oct. 13, 2016)). Generalized objections and nonspecific allegations, like those made by Dr. Okorie, will not suffice.

disallowance, as noted above. The Court will not second guess the Trustee's decision not to object to this claim. *See In re Bankest Cap. Corp.*, No. 04-10941-BKC-AJC, 2007 WL 656557, at *4 (Bankr. S.D. Fla. Feb. 27, 2007) ("Trustee has the express power to conserve estate resources by refraining from an objection to the allowance of any claim if no purpose would be served." (internal quotation marks omitted)); 11 U.S.C. § 704(a)(5) (trustee shall object to *improper* claim if a purpose would be served.).

## IV.   *Dr. Okorie's objections to claims of First Bank are moot because the claims were withdrawn.*

First Bank filed a proof of claim on November 20, 2019, for $816,063.89 secured by a lien on the Destin Condo and an assignment of rents.[27] *See* Claim No. 26-1. First Bank filed another proof of claim on March 16, 2021, for $756,819.08 on the same obligation.[28] *See* Claim No. 31-1. On June 15, 2023, First Bank withdrew both claims.[29] ECF Nos. 610, 611. The Notices of Electronic Filing indicate receipt of the claim withdrawals at 9:03 AM CDT and 9:05 AM CDT, respectively. *Id.*

Dr. Okorie filed his Objection to First Bank's Claim No. 26-1 on June 15, 2023, the same day that First Bank withdrew its proofs of claim. ECF No. 613. The Notice of Electronic Filing shows receipt of the objection at 3:28 PM CDT, several hours after the claims were withdrawn. *Id.* Two months later, on August 11, 2023, Dr. Okorie filed an Objection to Claim Nos. 26-1 and

---

[27] The Destin Condo was sold pursuant to court order, and proceeds were paid to lienholders including First Bank. *See* ECF No. 400.

[28] At the August 17 hearing, counsel for First Bank stated that Claim No. 31 was an update for amount owed rather than a separate debt obligation. ECF No. 792 at 40-41.

[29] At the hearing on the objection, counsel for First Bank stated that Dr. Okorie sent the bank an unsigned and undated objection around June 13 or 14, 2023. Upon review of the draft objection, First Bank "realized that its deficiency claim was less than $600 so it decided to simply withdraw its claims." ECF No. 792 at 41.

31-1 of First Bank. ECF No. 714. Also, on August 1, 2023, he filed an adversary complaint against the bank. ECF No. 696.

"A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule." Fed. R. Bankr. P. 3006. If an objection to the claim or an adversary complaint against the creditor is filed "*after* a creditor has filed a proof of claim . . . the creditor may not withdraw the claim except on order of the court after a hearing on notice." *Id.* (emphasis added). "If a claim is filed against the estate and then successfully withdrawn as of right pursuant to Bankruptcy Rule 3006, the withdrawn claim is a nullity and the parties are left as if the claim had never been filed." *In re 20/20 Sport, Inc*., 200 B.R. 972, 976 (Bankr. S.D.N.Y. 1996) (citing *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir.1995)).

Because First Bank's claims were withdrawn, Dr. Okorie's objections to the claims, filed after the withdrawals, are moot. *See Glasser v. Desert Ranch LLLP (In re Yellowstone Mountain Club, LLC)*, No. 08-61570-11, 2014 WL 1016007, at *2 (Bankr. D. Mont. Mar. 14, 2014) (recognizing that withdrawal of claim mooted objection to claim); *In re Surprise*, 342 B.R. 119, 122 (Bankr. N.D.N.Y. 2006) (noting that claim is moot given its withdrawal).

## Conclusion

This case was filed over four years ago. Dr. Okorie spent two years in chapter 11, where he judicially admitted much of the debt at issue here.  He was afforded two opportunities to confirm a chapter 11 plan when the Court approved his disclosure statements, which also validated much of the debt at issue here. On conversion, the Trustee liquidated assets of the estate by court order, objected to claims, and was winding up the estate, all of which were her statutory duties. *See* 11 U.S.C. § 704(a)(1), (5), (9).

The Bankruptcy Rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. The purpose of the rules governing claims is to require creditors to provide sufficient information so that a debtor may identify creditors and match their claims with scheduled debts. *In re Morales*, 520 B.R. 544, 548 (Bankr. W.D. Tex. 2014). That purpose was accomplished in this case.

Now, after receiving his discharge and causing his attorney to withdraw, Dr. Okorie is essentially seeking a "do-over." He is not entitled to one.

For the reasons stated above,

**IT IS THEREFORE ORDERED AND ADJUDGED** that Dr. Okorie's Objections to Claims are **OVERRULED**.

*##End##*