_____

**SO ORDERED,**

*/s/ Katharine M. Samson*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: February 12, 2024**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:  IKECHUKWU H. OKORIE** | **CASE NO. 19-50379-KMS** |
| **DEBTOR** | **CHAPTER 7** |

## OPINION AND ORDER
## DENYING MOTION FOR VIOLATION OF AUTOMATIC STAY (DKT. # 735)
## AND GRANTING MOTION TO ANNUL STAY (DKT. # 784)

This matter is before the Court on Debtor Ikechukwu H. Okorie's Objection to Claim No. 11-1 of PriorityOne Bank, taken as a motion under 11 U.S.C. § 362(k) for violation of the automatic stay ("Motion for Violation of Stay"); and on PriorityOne's Motion for Abandonment and Terminating of § 362 Automatic Stay Nunc Pro Tunc and/or Annulling the § 362 Automatic Stay ("Motion to Annul Stay"). This proceeding is core under 28 U.S.C. § 157(b)(2)(G) and (b)(2)(O).

Dr. Okorie alleges that four-and-a-half years ago, PriorityOne willfully violated the automatic stay in this bankruptcy case by foreclosing on its real property collateral without first obtaining an order granting relief from the stay. PriorityOne did indeed foreclose without obtaining relief. But PriorityOne has shown that the facts warrant annulment of the stay, and Dr. Okorie, who bears the burden of proof, has not shown why annulment should be denied.

The Motion to Annul Stay is therefore granted to April 17, 2019, the date PriorityOne requests, thereby validating the foreclosure. The stay having been annulled, the Motion for Violation of the Stay is denied.

## ALLEGATIONS THAT WILL NOT BE ADDRESSED

The Motion for Violation of Stay is one of dozens of objections, other contested matters, and adversary proceedings that Dr. Okorie has filed in rapid-fire succession pro se, mostly seeking to undo events that he himself set in motion. Twenty of the claims objections were overruled in the Opinion and Order on Debtor's Objections to Claims ("Order Overruling Claims Objections"), ECF No. 932, including an objection to PriorityOne's claim. The arguments against PriorityOne's claim have already been determined to be without merit and will not be reconsidered.

In addition to alleging a violation as to the real property, Dr. Okorie alleges a violation as to the sale of medical equipment that collateralized a loan held by Wells Fargo Bank. ECF No. 735 at 5. But a month after filing the Motion for Violation of Stay, Dr. Okorie testified at the hearing on his claims objections that he now knew it was not PriorityOne that sold the equipment. Hr'g Tr., ECF No. 792 at 22 ("I thought it was Mr. Henderson [PriorityOne's attorney] that sold the property until two days ago when he told me it wasn't him. . . . That's when I realized it was Wells Fargo that sold it."). The allegation as to the medical equipment is therefore considered withdrawn.

## FACTS

Dr. Okorie has been a debtor in bankruptcy either under chapter 11 or, as now, under chapter 7 for the past five years. His medical practice, Inland Family Practice Center LLC ("Inland"), has been operating under a confirmed chapter 11 plan for approximately three years. *See In re Inland Fam. Practice Ctr. LLC*, No. 19-50020-KMS, Conf. Order, ECF No. 358; Plan, ECF No. 333 (Bankr. S.D. Miss. filed Jan. 3, 2019) ("Inland Case").

The events that pushed Dr. Okorie and Inland into bankruptcy are recounted in the Order Overruling Claims Objections. The events relevant to the present motions also are recounted in the Order Overruling Claims Objections and are reiterated and expanded on here.

### I. The Bankruptcy Cases

Between them, Dr. Okorie and Inland have filed three bankruptcy cases. Two have been Dr. Okorie's individually: the present case, filed by counsel under chapter 11 and converted two years later to a case under chapter 7, after which counsel withdrew, ECF No. 491; and an earlier case under chapter 11, filed pro se and pending only a brief time, *In re Ikechukwu Hyginus Okorie*, No. 18-52169-KMS (Bankr. S.D. Miss. filed Nov. 6, 2018, dismissed Jan. 14, 2019) ("2018 Case"). The cases were filed in this sequence: first, Dr. Okorie's 2018 Case; then, the Inland Case in January 2019; and finally, Dr. Okorie's present case in February 2019.

### II. PriorityOne and the Automatic Stay

Several months before filing the 2018 Case, Dr. Okorie guaranteed a promissory note that Inland executed to PriorityOne. 2018 Case, Claim No. 4-1 at 6. As security, Dr. Okorie also executed a deed of trust granting PriorityOne a first priority lien on the property where Inland operated its clinic: 908 West Pine Street, Hattiesburg, Mississippi ("Clinic Property"). *Id.* at 4, 12; ECF No. 932 at 4. As of the filing of the 2018 Case, Inland owed $814,770.44 on the note. 2018 Case, Claim No. 4-1 at 4.

On the filing of the 2018 Case, PriorityOne promptly moved for relief from the stay on the grounds that (1) Inland had defaulted on the note, (2) PriorityOne was not adequately protected, and (3) that because the Clinic Property was pledged to secure the debt, there was little to no equity to benefit the estate. 2018 Case, ECF No. 31 at 3. Dr. Okorie did not respond but instead filed a motion to dismiss his case, *id.*, ECF No. 44, which was followed by the U.S. Trustee's motion to dismiss for Dr. Okorie's failure to file schedules and statements and to submit requested

documents, *id.*, ECF No. 55 at 2. Before dismissing the case, this Court granted PriorityOne's motion for relief to foreclose on the Clinic Property. *Id.*, ECF No. 53.[1]

On Inland's filing, PriorityOne again promptly moved for relief from the stay as to the Clinic Property on the same grounds as before. Inland Case, ECF No. 23 at 3. This time, the Court entered an agreed order requiring Inland to make monthly payments beginning March 1, 2019. *Id.*, ECF No. 75 at 5. Inland missed the March 1 payment, the stay lifted, and the Clinic Property was abandoned from Inland's bankruptcy estate. *Id.*, ECF No. 86 at 1. At this point, Dr. Okorie's present case had been pending for approximately one month.

On the filing of Dr. Okorie's present case, PriorityOne did not move for relief from the stay. Instead, PriorityOne's attorney, Derek Henderson, emailed a letter to Dr. Okorie's then-attorney, Patrick Sheehan, on April 17, 2019, seeking Sheehan's agreement that the automatic stay had terminated. After referencing the orders on stay relief in the 2018 Case and the Inland Case, Henderson wrote:

> I am proceeding with foreclosure of the property at 908 West Pine Street. However, there has not been an Order to Lift Stay in Dr. Okorie's [present] case. I note that 11 U.S.C. § 362(c)(3) provides that in [an] individual Chapter 11 case that is filed when the debtor had a case pending within the preceding one-year period but was dismissed, the stay is terminated as to property securing debt on the 30th day after the filing of the second case. My calculations show the second case was filed on February 27, 2019. So the 30th day is March 29, 2019. I did not see a motion to extend the stay in the case. Thus, as of March 29, 2019, the stay is terminated.
>
> **Do you agree that the stay is not in effect as to PriorityOne Bank in the second case (19-50379 KMS) and do you have an objection to PriorityOne Bank proceeding to foreclosure? Please confirm whether you agree or disagree.** If you do not agree, could you please tell me what you rely upon that the stay is still in effect?

---

[1] As in earlier filings, Dr. Okorie asserts that PriorityOne did not properly serve him with this motion. *See* ECF No. 735 at 3; *see also* Obj. to Cl., ECF No. 612 at 2; Mot. to Vacate J. for Fraud on the Ct., 2018 Case ECF No. 71 at 5. But notice is a nonissue, because the 2018 Case was forthwith dismissed. *See* ECF No. 932 at 9 (recounting that Court granted stay relief less than one month before case was dismissed).

ECF No. 735-1 at 51 (emphasis added). Sheehan replied, "We agree that there is no stay. The clinic will have moved out of 908 West Pine by May 1st [2019]." *Id.* at 50.

Consistent with Sheehan's assurance and on the same day, Inland filed a Notice of Intent to Abandon medical equipment located at the Clinic Property, stating that "the Debtor is closing its clinic at 908 West Pine Street . . . and consolidating all of its operations at the clinic at 3700 Hardy Street," which Dr. Okorie also owned. Inland ECF No. 100 at 1 (concerning equipment encumbered by liens in favor of Trustmark National Bank). Also consistent with Sheehan's assurance, the Clinic did indeed move out. *See* Notice of Intent to Abandon, Inland ECF No. 117 at 1 (concerning equipment encumbered by liens in favor of Wells Fargo Bank) ("[T]he Debtor has closed its clinic at 908 West Pine Street . . . .").

On May 7, 2019, Henderson sent a letter by U.S. mail to Inland, care of Dr. Okorie—and to Dr. Okorie personally—giving notice that PriorityOne had scheduled the foreclosure sale for June 7, 2019. ECF No. 784-1. At the foreclosure sale, PriorityOne bought the Clinic Property, ECF No. 784 at 10, and later filed a deficiency claim for $169,067.28 in this case and in the Inland Case. Cl. No. 11-2 at 2; Inland Case Cl. No. 1-2 at 2.

In November 2019, Dr. Okorie submitted a chapter 11 plan that acknowledged the foreclosure on the Clinic Property and provided that any deficiency would be paid as a general unsecured claim. *See* ECF No. 156 at 6. In August 2020, Inland submitted a plan that also acknowledged the foreclosure on the Clinic Property and provided that PriorityOne's deficiency claim in that case would be treated as a general unsecured claim. *See* Inland Case, ECF No. 333 at 7. In October 2020, Inland's plan was confirmed. Inland Case, ECF No. 358. In March 2021, after Dr. Okorie's case was converted, he filed his Official Form 108, Statement of Intention, in which he declared his intention to surrender the Clinic Property. ECF No. 365 at 2-3.

# CONCLUSIONS OF LAW

PriorityOne should have moved for stay relief before foreclosing. But the stay is annulled, as PriorityOne requests, for two reasons. First, stay relief would have been granted before the foreclosure if PriorityOne had sought that relief. Second, PriorityOne has established additional facts that warrant annulment.

Annulment is granted to April 17, 2019, the date the attorneys exchanged emails agreeing that the stay had terminated. Annulment to that date validates PriorityOne's otherwise-invalid foreclosure. It follows that no grounds exist for the Motion for Violation of Stay.

## I. The Court Need Not Decide Whether PriorityOne Committed an Actionable Stay Violation.

With exceptions not relevant here, a bankruptcy petition "operates as a stay, applicable to all entities," of most actions against the debtor, the debtor's property, and property of the bankruptcy estate. 11 U.S.C. § 362(a). Property of the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), here including Dr. Okorie's ownership interest in the Clinic Property. As to property of the estate, the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and "any act to . . . enforce any lien against property of the estate," 11 U.S.C. § 362(a)(4).

The stay may be terminated, annulled, modified, or conditioned under § 362(d) by court order; or it may terminate as to property of the estate by operation of law under § 362(e), a provision not applicable here. But otherwise, as to real property, "the stay of an act against property of the estate continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1).

However, an individual debtor who files a second case on the heels of a prior case's dismissal loses the full protection of the automatic stay thirty days after the filing:

> [I]f a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11 or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) . . . **the stay** under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease **shall terminate with respect to the debtor** on the 30th day after the filing of the later case . . . .

11 U.S.C. § 362(c)(3)(A) (emphasis added).[2] Section 362(c)(3)(A) applies here, because the 2018 Case was pending and dismissed within the year preceding the filing of Dr. Okorie's present case.

As a result, the question here is whether under § 362(c)(3)(A), termination of the stay of actions "with respect to the debtor" means the stay terminated as to the Clinic Property, which was property of the estate in the present case, or whether the stay continued in effect under § 362(c)(1). The Fifth Circuit Court of Appeals has answered that question, "conclud[ing] that § 362(c)(3)(A) terminates the stay only with respect to the debtor; it does not terminate the stay with respect to the property of the bankruptcy estate." *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 230 (5th Cir. 2019).

Notwithstanding, PriorityOne argues that its foreclosure was lawful. ECF No. 852 at 2. PriorityOne points out that *Rose* had not been decided when the two attorneys agreed that PriorityOne could proceed to foreclosure. *Id.* at 21. So PriorityOne relied on the only circuit-level decision at the time, in which the First Circuit Court of Appeals had held "that § 362(c)(3)(A) terminates the entire automatic stay—as to actions against the debtor, the debtor's property, and property of the bankruptcy estate—after thirty days for second-time filers," *Smith v. Me. Bureau of Revenue Servs. (In re Smith)*, 910 F.3d 576, 591 (1st Cir. 2018).

---

[2] The court may extend the stay if, after notice and a hearing completed before the thirty-day period expires, a party in interest so moves and "demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B).

But this argument misses a crucial point: PriorityOne was not free to decide for itself that the stay did not apply. In the absence of controlling authority, whether the stay protected the Clinic Property was a question for this Court. *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 304 (5th Cir. 2005) ("bankruptcy law demands some process prior to the seizure of arguable property").

A "willful" violation of the stay gives rise to an action for damages. 11 U.S.C. § 362(k)(1). "The Fifth Circuit has established a three-pronged test to determine a 'willful' violation of the automatic stay: '(1) [the creditor] must have known of the existence of the stay; (2) [the creditor's] acts must have been intentional; and (3) [the creditor's] acts must have violated the stay.'" *In re Reed*, 616 B.R. 77, 81–82 (Bankr. N.D. Miss. 2020) (quoting *Young v. Repine (In re Repine),* 536 F.3d 512, 519 (5th Cir. 2008)).

But whether the foreclosure violated the stay and, if yes, whether the violation was willful are questions that need not be answered, because equitable principles require that the stay be annulled.

## II. The Stay Is Annulled and the Foreclosure Is Validated.

Annulment is decided case by case, by balancing the equities. *Pentecost v. La. Safety Ass'n of Timbermen*, 626 B.R. 879, 886 (W.D. La. 2021) (citing *In re Nat'l Env't Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997)). "The Fifth Circuit has recognized the inherent power of the bankruptcy court to retroactively annul the automatic stay under the authority granted in § 362(d)." *Id.* at 885 (citing *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178-79 (5th Cir. 1989)); *see* 11 U.S.C. § 362(d) (providing that court may grant relief "such as by terminating, annulling, modifying, or conditioning [the] stay").

PriorityOne moves for annulment of the stay "as a precaution and due to the circumstances of the three bankruptcy cases." ECF No. 784 at 2. PriorityOne has shown that the circumstances warrant annulment, and Dr. Okorie has not proved that annulment should be denied. *See Jackson*

*v. Priority Trs. Servs. of Miss., L.L.C. (In re Jackson)*, 392 B.R. 666, 672 (Bankr. S.D. Miss. 2008) ("The creditor seeking retroactive relief must first show the presence of circumstances warranting annulment of the stay, and the debtor then bears the ultimate burden of proving that the request . . . should be denied.").

### A. PriorityOne Was Entitled to Stay Relief Before the Foreclosure.

The inquiry begins with whether PriorityOne was entitled to stay relief before it foreclosed. *See Pentecost*, 626 B.R. at 886 ("Under Section 362(d), [the creditor requesting annulment] must first show cause for relief from the automatic stay. Only upon a sufficient showing of cause could a bankruptcy court then consider the additional exceptional circumstances required to grant retroactive relief."); *In re Fennell*, No. 17-20095, 2017 WL 7050633, at *3 (Bankr. N.D. Tex. Nov. 13, 2017) ("In assessing whether retroactive relief—annulment—is proper, the Court considers whether [the creditor] would be granted stay relief had it not foreclosed the property."). PriorityOne asserts, correctly, that it would have been entitled to relief under § 362(d)(1) for cause and under § 362(d)(2) for lack of equity in the Clinic Property and because the Clinic Property was not necessary to an effective reorganization. ECF No. 784 at 20, 21.

### 1. Cause for Relief Existed Under § 362(d)(1).

A court "shall" grant relief from the stay for "cause," a term the Bankruptcy Code leaves undefined. *See* 11 U.S.C. § 362(d)(1). This lack of definition recognizes that bankruptcy courts need flexibility to balance the creditor's rights against the debtor's need for a breathing spell. *See Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 (5th Cir. 2006) (citing *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)). As this Court has recognized, "[w]hether cause exists to grant relief from the stay is determined on a case-by-case basis, based on the totality of the circumstances." *In re Haydel Props., LP*, No. 16-51259-KMS, 2017 WL 1155690, at *3 (Bankr.

S.D. Miss. Mar. 27, 2017) (quoting *In re Mantachie Apartment Homes, LLC*, 488 B.R. 325, 331 (Bankr. N.D. Miss. 2013)).

"Cause" includes lack of adequate protection of the creditor's property interest. 11 U.S.C. § 362(d)(1). "Adequate protection has generally been interpreted to encompass 'payment, replacement lien, or other relief sufficient to protect the creditor against diminution in the value of his collateral during bankruptcy.'" *In re Mantachie Apartment Homes*, 488 B.R. at 332 (quoting *Bank of N.Y. Tr. Co. NA v. Pac. Lumber Co. (In re Scopac)*, 624 F.3d 274, 278 n.1 (5th Cir. 2010)).

This Court recognized the lack of adequate protection in the agreed order in the Inland Case, under which Inland failed to make the required payments. Inland Case, ECF No. 75 at 3 ("POB is not adequately protected."). Dr. Okorie does not dispute the lack of adequate protection, arguing only that adequate protection was not required. ECF No. 790 at 9. As additional cause, PriorityOne has established that Dr. Okorie voluntarily vacated the Clinic Property so PriorityOne *could* foreclose, a fact strongly suggesting that Dr. Okorie would not have opposed stay relief for that purpose.

### 2. There Was No Equity in the Clinic Property and It Was Not Necessary to an Effective Reorganization Under § 362(d)(2).

A court "shall" grant relief from the stay of an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(A)-(B).

This Court recognized the lack of equity in the same order in which it recognized that PriorityOne's interest was not adequately protected. Inland Case, ECF No. 75 at 3 ("As the collateral is pledged to secure the Inland debt, there is little or no equity for the benefit of the estate."). Dr. Okorie may or may not be disputing this fact; he both admits there is *no* equity and at the same time argues there *is* equity. *Compare* ECF No. 790 at 9 ("[T]he total of all

encumbrances, or junior liens, exceeds the value of the property in question."),[3] *with id.* at 10 ("[T]here is still equity in this property . . . .").

The Clinic Property was not necessary to an effective reorganization. This fact was obvious by the time of the attorneys' emails, because neither Inland nor Okorie were making any payments and Inland was preparing to move out.

### B. Circumstances Warrant Annulment.

"Although a court may use the annulment power to give retroactive relief from the stay, relief should be granted sparingly." *Collier on Bankruptcy* ¶ 362.12[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). PriorityOne has shown that annulment is warranted because of "exceptional circumstances," *Pentecost*, 626 B.R. at 886.

First, circuit-level authority provided support for Sheehan's agreement, and ensuing events reinforced its seeming correctness: Sheehan readily agreed that Inland would vacate the premises, and he began following through that same day with notices of abandonment of equipment. Neither Inland nor Dr. Okorie attempted to stop the foreclosure sale, for which they had a month's advance notice. Both Inland and Dr. Okorie acknowledged the foreclosure in their respective chapter 11 plans. And neither Inland nor Dr. Okorie objected to PriorityOne's deficiency claim.

Second, more than four years have passed since Dr. Okorie voluntarily vacated the Clinic Property. Since then, PriorityOne has relied on what it believed was a valid foreclosure. It bought the Clinic Property, filed deficiency claims, and apparently sold the Clinic Property to a third party, ECF No. 1043 at 2, 7-8. Dr. Okorie and Inland, too, have treated the foreclosure as valid and necessary to a successful exit from bankruptcy. Dr. Okorie's plan and Inland's plan acknowledged the foreclosure and provided for payment of the deficiency claim.

---

[3] As to "encumbrances, or junior liens," Wells Fargo held a $552,230.54 judgment lien against the Clinic Property that was secondary to PriorityOne's interest. *See* Cl. No. 17-1 at 2; *see also* Plan, ECF No. 156 at 6.

Third, even if PriorityOne had not foreclosed when it did, Inland's and Dr. Okorie's demonstrated inability to pay the debt made foreclosure inevitable. Dr. Okorie recognized this reality when, two years later and on this case's conversion, he declared his intention to surrender the Clinic Property.

Dr. Okorie argues that annulment is precluded by *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020). ECF No. 790 at 7-8. There, the United States Supreme Court held that under the federal removal statute, 28 U.S.C. § 1446, the court from which a case is removed is without jurisdiction until after the case is remanded, 140 S. Ct. at 700, and that the district court's nunc pro tunc remand order could not "make the record what it is not," *id.* at 701 (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)).

But *Acevedo* is inapposite. The Bankruptcy Code expressly authorizes annulment as one form of relief from the stay, as the Fifth Circuit recognized decades ago. *See Sikes*, 881 F.2d at 178. Most courts agree that *Acevedo* does not apply to annulment of the stay. *See Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 393 (B.A.P. 9th Cir. 2020) ("Congress' decision to deploy four verbs to describe the various ways in which a bankruptcy court might grant relief from stay indicates an express decision to grant bankruptcy courts the broadest possible range of options in respect of the stay, including annulling it . . . ."); *Khan v. Panjwani (In re Khan)*, No. 20-60032-CIV, 2021 WL 4865278, at *5 (S.D. Fla. Oct. 19, 2021) ("[*Acevedo*] is different from this case for the following foundational reason: the text of the Bankruptcy Code itself gives Bankruptcy Judges the power not only to 'terminate' but also to 'annul' the automatic stay . . . ."); *In re Patel*, 642 B.R. 187, 197 n.8 (Bankr. N.D. Ga. 2022) (citing with approval *Merriman*); *contra In re Telles*, No. 8-20-70325, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020).

C. Annulment Validates the Foreclosure.

The Fifth Circuit Court of Appeals views acts in violation of the automatic stay as voidable, not void. *In re Dillon*, 619 B.R. 357, 362 (Bankr. S.D. Miss. 2020) (citing *Sikes*, 881 F.2d at 178). "A voidable action 'is invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay.'" *Id.* (quoting *Jackson*, 392 B.R. at 671). "If the stay is annulled, the effect of the stay is voided and the act (otherwise in violation of the stay) is retroactively validated." *Smith v. Dynasty Grp., Inc. (In re Heritage Real Estate Inv., Inc.)*, No. 16-00040-NPO, 2017 WL 4693991, at *6 (Bankr. S.D. Miss. Oct. 17, 2017) (quoting *Elbar Invs., Inc. v. Pierce (In re Pierce)*, 272 B.R. 198, 210 (Bankr. S.D. Tex. 2001)).

PriorityOne requests annulment of the stay to April 17, 2019, the date of the attorneys' email agreement. ECF No. 784 at 21. Annulment to this date validates PriorityOne's foreclosure on the Clinic Property.

**ORDER**

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Dr. Okorie's Motion for Violation of Stay is **DENIED;** and

**FURTHER ORDERED** that PriorityOne's Motion to Annul Stay is **GRANTED**, annulling to April 17, 2019, the automatic stay as to PriorityOne concerning the Clinic Property.

##END##