

SO ORDERED,

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 19, 2024**

The Order of the Court is set forth below. The docket reflects the date entered.

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: IKECHUKWU H. OKORIE | CASE NO. 19-50379-KMS |
| DEBTOR | CHAPTER 7 |

| | |
|---|---|
| IN RE: IKECHUKWU H. OKORIE | CASE NO. 19-50379-KMS |
| DEBTOR | CHAPTER 7 |

| | |
|---|---|
| IKECHUKWU HYGINUS OKORIE | PLAINTIFF |
| V. | ADV. PROC. NO. 23-06017-KMS |
| CITIZENS FINANCIAL GROUP INC., KIMBERLY R. LENTZ, and R. ANDREW FOXWORTH | DEFENDANTS |

## OPINION AND ORDER DENYING MOTIONS FOR RECUSAL

Before the Court are two identical motions for recusal on the ground of personal bias or prejudice ("Motions") by pro se Debtor Ikechukwu H. Okorie, one filed in the bankruptcy case and the other in Dr. Okorie's adversary proceeding against creditor Citizens Financial Group Inc.; its attorney, R. Andrew Foxworth; and chapter 7 Trustee Kimberly R. Lentz. ECF No. 1149, Adv. ECF No. 75. This proceeding is core under 28 U.S.C. § 157(b)(2)(A). The Motions are denied,

because Dr. Okorie has failed to show that any of the judicial actions alleged in the Motions are grounds for recusal.

**THE MOTIONS**

Dr. Okorie bases the Motions on "Incidents of Bias and Prejudice," ECF No. 1149 at 1, Adv. ECF No. 75 at 2, during a hearing on the following matters in the bankruptcy case:

- Dr. Okorie's Comprehensive Objection to the first application for compensation by the attorney for the Trustee, in which Dr. Okorie raised "several concerns," including that the proposed hourly rate of $350 was "exorbitant" and that the application lacked sufficient detail, extending to "fail[ure] to provide comprehensive justification or documentation" for expenses totaling $28.27. ECF No. 972 at 1-2.

- Dr. Okorie's Motion for Sanctions against the attorney for the Trustee for "engag[ing] in aggressive litigation tactics, including threats of sanctions and the recent filing of a motion for sanctions against Dr. Okorie." ECF No. 1010 at 1.

- The Trustee's Motion for Sanctions against Dr. Okorie as a "vexatious litigant," in which she pointed to his "more than thirty lawsuits" against "federal, state and local agencies, the Trustee, other private persons and entities, at least ten (10) of his lenders and several of their attorneys" and his subsequent pursuit of every avenue of appeal, culminating with the Mississippi Supreme Court and the United States Supreme Court. ECF No. 922 at 1. Focusing on bankruptcy, she tallied three cases, six adversary proceedings, fifteen claims objections, "and countless motions for sanctions and stay violations—many of which are frivolous, knowingly false,

>potentially defamatory and repetitively made in ignorance of the law and willful disregard of prior court orders." *Id.* at 2.

Each matter included various combinations of responses, joinders, Dr. Okorie's oppositions to joinders, and replies. *See* Hr'g Tr., ECF No. 1162 at 3.

Also set that day, but not heard, was Dr. Okorie's Motion for Urgent Review and Decision, ECF No. 1043, on his motion alleging that creditor PriorityOne Bank had violated the automatic stay with a foreclosure and sale that occurred more than four years ago. The Motion for Urgent Review was denied as moot, ECF No. 1101 at 2, because the subject motion had been resolved by the Opinion and Order Denying Motion for Violation of Automatic Stay and Granting [PriorityOne Bank's] Motion to Annul Stay, ECF No. 1059. Dr. Okorie's appeal from that order is pending in the district court. *See Okorie v. Lentz*, No. 2:24-cv-00020 (S.D. Miss. filed Feb. 16, 2024).

The Motions to Recuse describe three "incidents and interactions" during the hearing:

>a. **February 22, 2024, Hearing Conduct:** During a hearing held on February 22, 2024, Judge Samson displayed a demeanor towards me that I perceived as hostile and biased. This included intervening in my cross-examination of the Chapter 7 Trustee in a manner that seemed to support the Trustee's position, thereby compromising the fairness of the hearing.
>
>b. **Violation of Constitutional Rights:** In the same hearing, when I exercised my Fifth and Sixth Amendment rights, Judge Samson insisted that I continue to testify, asserting that the bankruptcy court did not have criminal authority and thereby minimizing the significance of my constitutional rights. This conduct disregarded my legal protections and demonstrated a lack of impartiality.

      **c. Forced Participation in the Hearing:** Towards the end of the hearing, when I expressed my discomfort and desire to leave the courtroom due to the proceedings' nature, Judge Samson compelled me to stay against my will, further evidencing the bias and prejudice against me.

ECF No. 1149 at 2, Adv. ECF No. 75 at 2.

## BURDEN OF PROOF AND APPLICABLE STATUTE

      The party moving for recusal bears the burden of proof by clear and convincing evidence. *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 401 B.R. 848, 860 (Bankr. S.D. Tex. 2009) (citing *Kinnear-Weed Corp. v. Humble Oil & Refin. Co.*, 441 F.2d 631, 634 (5th Cir. 1971)). "A motion to recuse is committed to the discretion of the targeted judge." *Id.* at 851 (citing *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999)). No evidentiary hearing is required. *In re Parson*, No. 21-30982, 2021 WL 5094786, at *4 (Bankr. N.D. Tex. Oct. 15, 2021) (citing *United States v. Cherry*, 330 F.3d 658, 666 n.13 (4th Cir. 2003)).

      Two statutes govern a federal judge's disqualification from a pending matter for personal bias or prejudice. *See* 28 U.S.C. §§ 144, 455. Section 144 requires a party's affidavit stating the facts and reasons for believing the judge is biased or prejudiced, either against that party or in favor of an adverse party. 28 U.S.C. § 144. Section 455, by contrast, is self-executing. *United States v. Miranne*, 688 F.2d 980, 985 (5th Cir. 1982). Section 455 sweeps more broadly than § 144, its catch-all provision requiring disqualification "in any proceeding in which [the judge's] impartiality might reasonably be questioned," 28 U.S.C.§ 455(a). *See Liteky v. United States*, 510 U.S. 540, 548 (1994) (discussing § 455(a)). And unlike under § 144, "personal bias or prejudice concerning a party" is just one of several disqualifying circumstances. *See* 28 U.S.C. § 455(b)(1)-(5).

Dr. Okorie moves for recusal under § 144, attaching an affidavit. ECF No 1149 at 1, 5; Adv. ECF No. 75 at 1, 5. But § 144 applies only to district court judges. *See* 28 U.S.C. § 144 ("Whenever a party to any proceeding in a *district* court . . . ." (emphasis added)).

A party moves for recusal of a bankruptcy judge under § 455. *Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 932 (9th Cir. 2002) ("[B]ankruptcy court judges are subject to recusal only under 28 U.S.C. § 455."); Fed. R. Bankr. P. 5004(a) ("A bankruptcy judge shall be governed by 28 U.S.C. § 455 . . . ."); 28 U.S.C. § 455(a) (applying to "*[a]ny* justice, judge, or magistrate judge of the United States" (emphasis added)).

The Motions are therefore taken as requesting disqualification for personal bias or prejudice under § 455(a) and (b)(1), which "afford separate, though overlapping grounds for recusal," *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003). Section 455(a) pertains to the appearance of partiality. *Liteky*, 510 U.S. at 548 ("[W]hat matters [under § 455(a)] is not the reality of bias or prejudice . . . ."). Section 455(b)(1) pertains to the circumstance of partiality.

## NO BASIS FOR RECUSAL

To succeed under § 455(a) and (b)(1), Dr. Okorie must clear three hurdles. *See Andrade*, 338 F.3d at 454-55. First, he must establish either that the Court's allegedly unfavorable opinion originated from an improper source outside the context of judicial proceedings or, if it developed during the proceedings, that it "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 455 (quoting *Liteky*, 510 U.S. at 555). Second, he must place the allegedly disqualifying incidents in the context of "the entire course of judicial proceedings." *Id.* Third, he must meet the objective observer standard. *Id.* at 454-55. Dr. Okorie has failed to clear even one of these hurdles.

### I. The Incidents Were Not of Extrajudicial Origin
### and Do Not Show that Fair Judgment Is Impossible.

Dr. Okorie has neither alleged nor shown an extrajudicial source for what he contends is a personal bias or prejudice against him. The question, then, is whether the incidents he recounts show that fair judgment is impossible. Dr. Okorie has presented no evidence that these incidents demonstrate "such a high degree of antagonism," *United States v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2021).

"Not *all* unfavorable disposition towards an individual (or his case) is properly described by those terms ['bias or prejudice']." *Liteky,* 510 U.S. at 550. "If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Id.* at 551 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)). "'[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless* they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555 (emphasis added).

"'Partiality' does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." *Id.* at 552. A trial judge may be "exceedingly ill disposed towards the defendant" at the completion of the evidence and "is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings." *Id.* at 550-51. Also not establishing bias or partiality are "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555-56. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.*

A. Allegedly Hostile and Biased Demeanor

Dr. Okorie alleges that the Court displayed a "hostile and biased" demeanor towards him, including "intervening in [his] cross-examination of the Chapter 7 Trustee in a manner that seemed to support the Trustee's position." ECF No. 1149 at 2, Adv. ECF No. 75 at 2. The Court did indeed interrupt Dr. Okorie's cross, for example, here, concerning the Trustee's payment of Wells Fargo Bank, a creditor, per court order:

Q: —and protect prior court orders, you said that. You said to protect prior court orders, like Court issued some orders, right, and I'm asking you, Ms. Lentz, one of the court orders you are protecting is you paid Wells Fargo. Did you pay Wells Fargo?

A: I did pay—yes, I did.

Q: And it is a court order?

A: That's right.

Q: You're telling the Court that the Court said you should pay Wells Fargo on the records?

    The Court: Dr. Okorie, I'm going to stop this. I in fact order[ed]—

    Mr. Okorie: To pay Wells Fargo.

    The Court: —that Wells Fargo would be paid.

    Mr. Okorie: Okay. So—

    The Court: Yes. There is a court order.

    Mr. Okorie: Okay.

    The Court: You should know this.

    Mr. Okorie: I know.

> The Court: I have spelled this out.
>
> Mr. Okorie: Okay.
>
> The Court: Over and over. She sold the Destin property and she sold a house in Hattiesburg, and when those properties were sold, I think I've repeated this more than once, I entered an order spelling out who was getting paid from those proceeds on the Hattiesburg house order and the Destin property order. Wells Fargo was one of the several parties—
>
> Mr. Okorie: Okay.
>
> The Court: —who was being paid, so I'm not really sure where you're going with this question[], but if your question is, did she pay Wells Fargo pursuant to court order, the answer is yes.

ECF No. 1162 at 61-62.

If this interaction "seemed to support the Trustee's position," it is because the record to that point showed the Trustee's position to be legally and factually correct. As to the Court's "hostile and biased" demeanor, this interaction and similar others manifest only ordinary impatience and exasperation. But even if Dr. Okorie were correct that the Court was "hostile" towards him, "judicial remarks during the course of a trial that are critical or disapproving of, *or even hostile to*, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," *Liteky*, 510 U.S. at 555 (emphasis added).

### B. Fifth and Sixth Amendment Rights

Dr. Okorie alleges that the Court "minimize[ed] the significance of [his] constitutional rights" and "disregarded [his] legal protections" by "insist[ing] that [he] continue to testify" after

asserting his rights under the Fifth and Sixth Amendments of the United States Constitution. ECF No. 1149 at 2, Adv. ECF No. 75 at 2. This allegation has no basis in law or fact.

As to law, the Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Sixth Amendment preserves several rights that pertain to criminal jury trials and the procedural rights of the accused. Dr. Okorie did not specify which Sixth Amendment right(s) he was invoking, but the Court infers it was this one: "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Fifth and Sixth Amendment protections do not apply in civil cases. *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) ("Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in non-criminal cases, that does not alter our conclusion that a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." (citations omitted)); *Player v. Reese*, 300 F. App'x 310, 311 (5th Cir. 2008) (stating that "the [Sixth Amendment] right to effective assistance of counsel does not apply in a civil context"). Because Dr. Okorie is pro se, the Court informed him of the law, albeit obliquely. ECF No. 1162 at 9 ("Dr. Okorie, there is no criminal liability. You're not facing any criminal liability.").

More important for Dr. Okorie, invoking the Fifth Amendment at this hearing risked raising an adverse inference. *See Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *Powers v. Caremark Inc. (In re Powers)*, 261 F. App'x 719, 723 (5th Cir. 2008) ("The bankruptcy court was entitled to draw an adverse inference from Powers'

assertion of his Fifth Amendment rights and refusal to testify at trial."). The Court alerted Dr. Okorie to this risk, to no avail:

> The Court: Dr. Okorie, when you do that [plead the Fifth Amendment], that means that all of the questions are deemed to—any question he asks you that you do not answer is deemed to—your answer is deemed to be something that would incriminate you. Therefore, it will be whatever the worst—the Court will take whatever—
>
> [Dr. Okorie]: Your Honor, I will not answer any questions they're asking me today.
>
> I would like to plead my Fifth and my Sixth Amendment rights today.

ECF No. 1162 at 9-10.

As to fact, the Court did not insist that Dr. Okorie continue to testify. After the exchange just quoted, Dr. Okorie, unimpeded by the Court, pleaded the Fifth and Sixth Amendments thirty-seven times during direct and re-direct examination by counsel for the Trustee, to every question including that Dr. Okorie state his name. ECF No. 1162 at 10, 71-81. He also refused to answer any questions by counsel for PriorityOne Bank, which had filed a response in support of the Trustee's Motion for Sanctions, ECF No. 1062:

> The Court: Dr. Okorie, are you going to plead the Fifth if Mr. Henderson puts you on the stand?
>
> Mr. Okorie: I will plead the Fifth and the Sixth.
>
> The Court: Okay.

ECF 1162 at 12.

C. Allegedly Forced Participation in Hearing

Dr. Okorie alleges that when he "expressed [his] discomfort and desire to leave the courtroom due to the proceedings' nature," the Court "compelled [him] to stay against [his] will." ECF No. 1149 at 2, Adv. ECF No. 75 at 2. The Court did indeed deny Dr. Okorie's request to leave before the hearing concluded. But Dr. Okorie did not express "discomfort":

Mr. Okorie: Your Honor, if I may ask, can I leave?

The Court: No.

Mr. Okorie: Okay.

ECF No. 1162 at 99.

The Court denied Dr. Okorie's request to leave because it was Dr. Okorie's motion for sanctions that was being heard. *See* ECF No. 1162 at 92. Dr. Okorie had in that moment finished his argument and the Court had invited the Trustee's response. ECF No. 1162 at 99.

As for "the proceedings' nature," the Court assumes Dr. Okorie means the hearing's adversarial nature, which he undoubtedly experienced as stressful. Litigation *is* stressful, especially for pro se litigants. But no one dragged Dr. Okorie into court and no one compelled him to litigate pro se. He voluntarily filed this bankruptcy case and for three years was represented by counsel. Then, two years ago, his attorney withdrew because of "irreconcilable differences on how to proceed in the case," Dr. Okorie having begun filing pro se pleadings to which his attorney "[did] not subscribe." ECF No. 488 at 1.

This case was substantially administered and should have been ready to close nine months ago. But by that time, Dr. Okorie was filing motions, objections, and adversary proceedings in such volume that the Court was forced to issue stays to manage its docket, even as Dr. Okorie's

Page **11** of **13**

filing frenzy has continued unabated. If Dr. Okorie is experiencing litigation-related stress, he has only himself to blame.

## II. The Record as a Whole Does Not Support Recusal.

The context for recusal is "the entire course of judicial proceedings, rather than isolated incidents." *Andrade*, 338 F.3d at 455 (citing *Sao Paulo State of Federative Rep. of Brazil v. Am. Tobacco Co.*, 535 U.S. 229, 232-33 (2002); *United States v. Avilez-Reyes*, 160 F.3d 258, 259 (5th Cir. 1998)). Here, the context is not just the hearing on which the Motions are based or even just this bankruptcy case. Dr. Okorie has been a debtor in bankruptcy and the principal of a corporation in bankruptcy for more than five years in cases assigned to this Court. He has filed two individual cases, the first under chapter 11, filed pro se and pending only a brief time, *In re Ikechukwu Hyginus Okorie*, No. 18-52169-KMS (Bankr. S.D. Miss. filed Nov. 6, 2018, dismissed Jan. 14, 2019), and the present case. His medical practice operates as a reorganized debtor under a confirmed chapter 11 plan. *See In re Inland Fam. Prac. Ctr. LLC*, No. 19-50020-KMS, Conf. Order, ECF No. 358; Plan, ECF No. 333 (Bankr. S.D. Miss. filed Jan. 3, 2019). Dr. Okorie has made no showing for recusal based on the cumulative record in these cases or in the adversary proceedings associated with them.

## III. An Objective Observer Would Not Question the Court's Impartiality.

According to Dr. Okorie, the incidents he describes in the Motion "significantly impair [his] confidence in [the Court]'s ability to conduct a fair and impartial trial." ECF No. 1149 at 2, Adv. ECF No. 75 at 2. But Dr. Okorie's confidence is not the standard here. The standard for bias is objective, and Dr. Okorie has not met it.

"[I]t is with reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person' that the objective standard is currently

established." *Andrade*, 338 F.3d at 455 (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). Under this standard, the question is "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *Brocato*, 4 F.4th at 301 (quoting *Jordan*, 49 F.3d at 155). Dr. Okorie has presented no evidence that such a person would doubt the Court's impartiality.

## CONCLUSION

A federal judge has a duty to not sit where disqualified but an equally strong duty to sit where not disqualified. *Sensley v. Albritton*, 385 F.3d 591, 598-99 (5th Cir. 2004) (quoting *Laird v. Tatum*, 409 U.S. 824, 837 (1972)). Here, the duty is to sit.

## ORDER

Dr. Okorie having failed to meet his burden of proof under 28 U.S.C. § 455, the Motions for Recusal are **ORDERED DENIED**.

##END##